902

HARMONY GROVE SCHOOL DIST. No. 1 *v.* CAMDEN SCHOOL
DIST. No. 35.

5-1286                                       302 S. W. 2d 281

Opinion delivered May 27, 1957.

*J. S. Brooks* and *M. P. Matheney,* for appellant.

*Gaughan, McClellan & Laney,* for appellee.

MINOR W. MILLWEE, Associate Justice.   In 1944 the
United States acquired a large body of land in Ouachita
and Calhoun counties for the construction and opera-
tion of a naval ammunition manufacturing plant pur-
suant to the provisions of the Constitution of the United
States, Art. 1, Sec. 8 Clause 17,[1] and Ark. Stats., Sec. 10-
1101.[2] All the land lying in Ouachita County was within
and a part of the appellant, Harmony Grove School Dis-
trict No. 1.   For several years after acquisition of the
land and operation of the munitions plant by the fed-
eral government some of the children in the area at-
tended the schools of the Harmony Grove District while
others attended the schools of appellee, Camden School
District No. 35, pursuant to various orders of the ap-
pellant, Ouachita County Board of Education.

On June 21, 1955, the County Board of Education
entered an order assigning all school children in the

---

[1] This section provides that Congress shall have power to exercise
exclusive legislation over all places purchased by the United States,
"by the consent of the legislature of the state in which the same shall
be, for the erection of forts, magazines, arsenals, dockyards, and other
needful buildings . . ."

[2] By this statute the state consents to such purchases by the
United States and cedes state jurisdiction over such properties to the
United States with certain exceptions.

area in question to the Harmony Grove District and directed the proper officers to effect such assignment and allot all financial benefits of state aid and county apportionment to said district. The Camden District and 90 patrons appealed from the order on the grounds that it was illegal and contrary to the best interests of the children and patrons involved. The County Board of Education and Harmony Grove District intervened and answered in the Circuit Court where a jury was waived and the cause submitted for a determination of one question under a stipulation of the following facts pertinent thereto:

"That both the Camden District and the Harmony Grove District are regularly organized and existing common school districts, lying within the boundaries of Ouachita County, Arkansas.

"That on Dec. 6, 1944, the Federal Government acquired title to the area here in dispute, for construction and operation of a Naval Ammunition manufacturing plant. Prior to such acquisition, this area was a part of The Harmony Grove District, in Bradley Township, Ouachita County. The said Federal area does not touch the boundaries of The Camden District. After the Government's acquisition, 150 or more children of school age have resided in the Area, formerly a part of The Harmony Grove District. Since its acquisition, the United States has continuously held title to the area in question as an integral part of the Naval Ammunition Depot, which has been engaged in the manufacture of munitions."

The following question was submitted as the sole issue for decision under the stipulation: "Were the legal rights or jurisdiction of the Harmony Grove District, for school purposes, divested by the acquisition of the land within the geographical boundaries of said district by the federal government in 1944, as to the territory thus acquired, and the formation by the government into a federal area now known as the Naval Ammunition Depot Area?" The instant appeal is from the judg-

ment of the Circuit Court answering the posed question in the affirmative. Other findings in said judgment are not in issue here.

In support of the able trial court's holding the appellees earnestly insist that the United States having acquired the area in 1944 with the consent of the state and having since maintained it as an arsenal, or munitions plant; it inescapably follows that the area is no longer a part of the Harmony Grove District which has since such acquisition been divested of all jurisdiction and legal rights for school purposes. We cannot accede to this view.

The legislatures of the respective states are required by constitutional provisions to provide a system of free public schools whereby all children may receive an education.[3] 47 Am. Jur., Schools, Sec. 7. We are cited to no instance in which the federal government has assumed this most important duty and function traditionally exercised by the several states in those areas ceded to the government for military purposes. Nor are we cited to any authority directly in point on the exact question at issue. However there is authority for the proposition that the acquisition by the federal government of land situated within a school district for military purposes does not detach or remove such territory from the district, but it remains a part thereof, and the validity of the district is not thereby impaired. 78 C. J. S., Schools and School Districts, Sec. 30 (a).

In answer to the contention that a school district ceased to validly exist as to that portion of its territory acquired by the United States for military purposes in *Hufford* v. *Herrold,* 189 Iowa 853, 179 N. W. 53, the court said: "The acquisition by the United States government of a portion of the territory included within said district for military purposes, it is true, deprived

---

[3] "Intelligence and virtue being the safe-guards of liberty and the bulwark of a free and good government, the State shall ever maintain a general, suitable and efficient system of free schools whereby all persons in the State between the ages of six and twenty-one years may receive gratuitous instruction." [Ark. Constitution, Art. 14, Sec. 1.]

the district of the right to levy and collect taxes therefrom, but our attention is called to no statutory provision or other authority to the effect that such action changed the boundaries of said district, or took the land thus acquired by the government out of the territorial limits of the district . . . If the United States government shall in the future restore the land taken to private ownership, it would doubtless be subject to the payment of taxes, the same as though the government had not acquired it for military purposes.''

In sustaining the validity of a state statute authorizing the state board of education to establish independent school districts upon U. S. military reservations located within the state, we find this statement by the Texas court in *Central Education Agency* v. *Independent School Dist.*, 152 Texas 56, 254 S. W. 2d 357: ''At the time the Federal government enlarged the area of the Fort Bliss Military Reservation, the added area was a part of various school districts in El Paso County, other than El Paso Independent School District. The taking over of this area by the Federal government did not remove such area from the respective school districts, nor did it serve to change the boundaries of these districts. It is true that the state and all of its subdivisions lost all power to tax or control the area and the property situated thereon, except as may be agreed upon by the State and Federal authorities. But for the two orders passed by the State Board of Education attaching and including such area to the El Paso Independent School District, the area would have remained in, and as a part of, those other school districts to which it belonged at the time of the taking over of such area by the Federal government.'' That case also reflects the policy of the federal authorities to leave the education of children within the area of U. S. military reservations to state and local agencies charged with such duty and the disposition on the part of such authorities to cooperate with such agencies in the discharge of that duty.

In addition Congress has enacted several. statutes[4] in recent years in recognition of federal responsibility for the impact which projects like this have had on school construction needs in the affected area as well as other financial burdens placed on state and local educational agencies by reason of such acquisitions and operations. In providing federal financial assistance to the state and local school districts in these statutes Congress has fully recognized the authority and jurisdiction of such local agencies over the affected area for school purposes. The recognition of such authority in no manner interferes with the proper exercise of federal jurisdiction of the area for military or defense purposes. In carrying out the state's constitutional duty to educate its children the local school district is not exercising any jurisdiction contrary to that of the United States in the operation of its arsenal. This does not mean that the federal government could not set up and operate schools in the area if it saw fit to do so. Thus it has been held that land ceded to the federal government and used by it for the operation of an Indian school is no longer a part of the local district in which it is situated. *School Dist. No. 20* v. *Steele,* 46 S. D. 589, 195 N. W. 448. But the government is not engaged in the operation of a school here. Nor has Congress seen fit to exercise the discretionary power of "exclusive legislation" given it under the Constitution (Art. 1, Sec. 8, *supra)* over areas, acquired by the government for military purposes such as the one involved here.

We hold that the jurisdiction or legal rights of the Harmony Grove District for school purposes over the area in question were not divested by its acquisition by the United States in 1944; and that the posed question should be answered in the negative. The judgment is reversed and the cause remanded with directions to enter judgment **accordingly.**

---

[4] Public Law 815 enacted September 23, 1950; Public Law 874 enacted September 30, 1950; Public Law 248 of August 8, 1953; and Public Law 382 passed August 12, 1955.