IN THE MATTER OF THE PETITION OF SALEM TRANS-
PORTATION COMPANY OF NEW JERSEY, INC., FOR
APPROVAL OF MUNICIPAL CONSENTS FOR THE OP-
ERATION OF LIMOUSINE SERVICE FROM FORT DIX
AND McGUIRE AIR FORCE BASE TO NEWARK AIR-
PORT AND THE MILITARY OCEAN TERMINAL,
BAYONNE, NEW JERSEY, AND IN THE MATTER OF
THE PETITION OF D & M TAXI COMPANY, INC., FOR
APPROVAL OF MUNICIPAL CONSENTS FOR THE OP-
ERATION OF LIMOUSINE SERVICE FROM FORT DIX
AND McGUIRE AIR FORCE BASE TO NEWARK AIRPORT
AND THE NAVAL SUPPLY DEPOT IN BAYONNE, NEW
JERSEY.

Argued January 21, 1970—Decided April 20, 1970.

*Mr. Thomas J. McCluskey* argued the cause for appellant Public Service Coordinated Transport (*Mr. Richard Fryling,* attorney).

*Mr. Jacob Schwartz* argued the cause for appellant Lincoln Transit Co., Inc. (*Messrs. Schreiber & Lancaster,* attorneys).

*Mr. Daniel J. Lyons, Jr.* argued the cause for respondent D & M Taxi Company, Inc.

*Mr. George H. Rosen* of the New York bar argued the cause for respondent Salem Transportation Company of New Jersey, Inc. (*Mr. Donald D. Phillips,* attorney).

*Mr. William Gural* argued the cause for respondent Board of Public Utility Commissioners (*Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney).

PER CURIAM: This case was argued with *In Re Asbury-Red Bank Limousine Service* which has been decided today. 55 *N. J.* 551 (1970). Here the petitioners applied to the Board of Public Utility Commissioners for approval of their respective limousine services between Fort Dix and McGuire Air Force Base on the one hand and Newark Airport and the Military Ocean Terminal, Bayonne, on the other. The petitioners had obtained municipal consents from many of the communities along their routes but had not obtained consents from Newark and Bayonne or from municipalities in which

Fort Dix and McGuire Air Force Base are geographically located. However the petitioners do not pick up or discharge passengers in any of the nonconsenting municipalities except within the confines of the Port of New York Authority's Newark Air Terminal and the confines of the United States governmental reservations at Fort Dix, McGuire Air Force Base and the Military Ocean Terminal.

The appellants Public Service Coordinated Transport and Lincoln Transit Co., Inc. moved before the Utility Commissioners for dismissal of the petitions because of the absence of consents from the municipalities referred to above. Their motions were denied in opinions which held that so long as pickups and discharges were confined to the federal bases and Newark Airport the approval of the Utility Commissioners was not required. The opinions concluded with determinations that the petitioners could operate their services as requested "subject to the requirements of R. S. 48:4–36, the Board's Administrative Order 14:212, the filing of tariffs and annual reports, and other applicable rules and regulations of this Board."

Public Service and Lincoln Transit filed a notice of appeal to the Appellate Division and we certified before argument there. In their joint brief on appeal the appellants have raised but two questions. Their first is whether, under the circumstances, municipal consents and approvals by the Board are required from Newark and Bayonne and the municipalities in which Fort Dix and McGuire Air Force Base are located. Their second is whether there is sufficient support for the Board's assumption that the limousine service, apart from Newark Airport, is "between points on Federal property." The record, as supplemented at oral argument, calls for an affirmative answer to this second inquiry.

■■ Insofar as the first inquiry is concerned we may refer primarily to our opinion in *In Re Asbury-Red Bank Limousine Service, supra.* We there pointed out that, for present purposes, Newark Airport may properly be viewed as a separate enclave and that limousine service from the air-

port through Newark to outlying points may be approved by the Board under *N. J. S. A.* 48:4–10 without Newark's consent. It is evident to us that under the same approach and for the same underlying reasons the Board, acting under *N. J. S. A.* 48:4–10, may approve limousine service between federal enclaves or between Newark Airport and the federal enclaves without the consent of Newark or any of the municipalities in which the federal enclaves are located.

The Constitution authorizes Congress to acquire land from States for needful purposes (*Art. 1, Sec. 8, par.* 17) and our Legislature has explicitly ceded exclusive jurisdiction to the United States of all lands so acquired. *N. J. S. A.* 52:30–2. The record is silent as to whether the United States formally accepted such exclusive jurisdiction over the governmental reservations referred to in the petitions (*see* 40 *U. S. C. A.* § 255; *cf. Markham v. United States,* 215 *F.* 2d 56 (4 Cir. 1954), *cert. denied,* 348 *U. S.* 939, 75 *S. Ct.* 360, 99 *L. Ed.* 735 (1955); *United States v. Heard,* 270 *F. Supp.* 198 (D. Mo. 1967)) but the proceedings below were apparently conducted on the assumption by all that it had. In any event, no one seems to dispute before us that the governmental reservations are actually within the control of the military and not the municipalities; that the military police control traffic, issue summonses returnable before federal officials, and govern all internal vehicular movements; and that the military has made the necessary arrangements which enable the petitioners to pick up and discharge passengers within the governmental enclaves. Under these circumstances, the municipalities within which the enclaves are located would have no real interest exceeding that of other municipalities through which the limousines will travel and, since there will be no local stops for passengers, the local officials would not be concerned "with any special safety or other traffic factors beyond those applicable to through traffic generally." *In Re Asbury-Red Bank Limousine Service, supra,* 55 *N. J.* at 558.

In the light of the foregoing, the Board could readily have have proceeded, as it did in *In Re Asbury-Red Bank Limou-*

*sine Service, supra,* with appropriate steps leading to approval of the municipal consents which the petitioners had obtained (*N. J. S. A.* 48:4–3), to permission to travel through the municipalities which had failed to grant consents (*N. J. S. A.* 48:4–10), and to findings that the limousine operations set forth in the petitions would be necessary and proper for the public convenience and would properly conserve the public interest. *N. J. S. A.* 48:2–14; *cf. Gray Line Sightseeing Tours, Inc. v. Carter,* 159 *So.* 2d 217, 219 (Fla. Sup. Ct. 1964). Instead it took the position, which neither petitioner had asserted in its petition, that no approval from the Board was required because the petitioners' transportation services would begin or end within federal enclaves. The record and briefs before us do not adequately deal with this issue and, in view of the fact that the petitions did not deny the Board's jurisdiction but, on the contrary, sought its approval, we shall not deal with it at length at this stage but shall remand the matter to the Board for further proceedings.

On the remand, the Board will bear in mind that "so long as there is no interference with the jurisdiction asserted by the Federal Government" (*Howard v. Commissioner of Louisville,* 344 *U. S.* 624, 627, 73 *S. Ct.* 465, 467, 97 *L. Ed.* 617, 621 (1953); *Freeholders of Burlington Cty. v. Mc-Corkle,* 98 *N. J. Super.* 451, 461 (Law Div. 1968)), the State's domain continues. *See Hughes Transp., Inc. v. United States,* 128 *Ct. Cl.* 221, 121 *F. Supp.* 212 (1954); *Bartsch v. Washington Metropolitan Area Transit Com'n,* 357 *F.* 2d 923 (4 Cir. 1966); *cf. City of Wichita Falls v. Bowen,* 143 *Tex.* 45, 182 *S. W.* 2d 695 (1944); *Baltimore & A. R. Co. v. Lichtenberg,* 176 *Md.* 383, 4 *A.* 2d 734, *appeal dismissed,* 308 *U. S.* 525, 60 *S. Ct.* 77, 84 *L. Ed.* 444 (1939). There is no concern with any actual intrusion on activities within the federal enclaves for no one here is suggesting any such intrusion. But once the limousines leave the enclaves and seek to travel over New Jersey highways, the State's high interests are obvious and lend weighty support

for its requirements including the municipal consents under *N. J. S. A.* 48:4–3 which, however, may not be withheld arbitrarily and are, in any event, subject to the closed door proviso in *N. J. S. A.* 48:4–10. *See Hughes Transp., Inc. v. United States, supra,* 128 *Ct. Cl.* 221, 121 *F. Supp.* at 218–22.

Remanded.

*For remandment*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*Opposed*—None.