[Civ. No. 45408. First Dist., Div. Three. Jan. 21, 1980.]

In re TERRY Y., a Minor.
DARDELL McFARLIN, as Director, etc.,
Plaintiff and Respondent, v.
BENNY Y. et al., Defendants and Appellants.

**COUNSEL**

Willard P. McCrone, under appointment by the Court of Appeal, for Defendants and Appellants.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Clifford K. Thompson, Jr., and R. Gordon Baker, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**SCOTT, J.**—Terry Y., a minor, was declared by the juvenile court to be a dependent child and removed from the custody of his parents because of physical abuse. His parents on appeal contend that the state court lacks jurisdiction over Terry in that he is a resident of Fort Ord, a federal enclave. We conclude that the juvenile court's exercise of jurisdiction does not conflict with federal sovereignty; therefore, the ex-

clusive jurisdiction over federal enclaves granted by the Constitution to the Congress was not violated.

Terry Y. and his parents are residents of Fort Ord, a federal military installation in Monterey County. In September of 1976, Terry was declared a dependent child of the court as a minor coming within the provisions of Welfare and Institutions Code section 600, subdivision (d) (superseded by Welf. & Inst. Code, § 300, subd. (d)).[1] Terry, a nine-month-old infant, had suffered a fractured femur and a previous fracture of the rib as a result of parental abuse and neglect. After being declared a dependent child of the court, he was returned to his parents' home. In December of the same year, Terry suffered a fractured thigh, resulting in a petition for modification and the removal of Terry from the custody of his parents pursuant to section 387 of the Welfare and Institutions Code. Approximately a year later, in February of 1978, Terry was returned to the custody of his parents but continued as a dependent child of the juvenile court. In July of 1978, Terry suffered his fourth fracture in his parents' home as a result of parental abuse and neglect. The court then removed Terry from the custody of his parents pursuant to section 361 of the Welfare and Institutions Code.

■ The sole contention of Terry's parents on appeal is that the court lacked jurisdiction. Article I, section 8, clause 17 of the United States Constitution provides that Congress is empowered to "exercise exclusive Legislation in all Cases whatsoever...over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings." The People concede that the area comprising Fort Ord is what has been referred to as a federal enclave in which the United States has exclusive jurisdiction within the meaning of the Constitution.

The constitutional provision has been applied to invalidate taxes imposed upon property located in federal enclaves (*Surplus Trading Co.*

---

[1] Welfare and Institutions Code section 300 provides in pertinent part: "Any person under the age of 18 years who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge such person to be a dependent child of the court:

" . . . . . . . . . . . . .

"(d) Whose home is an unfit place for him by reason of neglect, cruelty, depravity, or physical abuse of either of his parents, or of his guardian or other person in whose custody or care he is." (Added by Stats. 1976, ch. 1068, § 6, p. 4759. Amended by Stats. 1978, ch. 539, § 1.)

v. *Cook* (1930) 281 U.S. 647 [74 L.Ed. 1091, 50 S.Ct. 455]; *United States* v. *Mississippi Tax Comm'n* (1973) 412 U.S. 363 [37 L.Ed.2d 1, 93 S.Ct. 2183]), to invalidate licensing requirements (*Collins* v. *Yosemite Park Co.* (1938) 304 U.S. 518 [82 L.Ed. 1502, 58 S.Ct. 1009]), to prohibit price regulation of products sold on federal enclaves (*Pacific Coast Dairy* v. *Dep't.* (1943) 318 U.S. 285 [87 L.Ed. 761, 63 S.Ct. 628]; *Paul* v. *United States* (1963) 371 U.S. 245 [9 L.Ed.2d 292, 83 S.Ct. 426]), to reverse criminal convictions where the offense occurred on federal land (*People* v. *Mouse* (1928) 203 Cal. 782 [265 P. 944]). However, in the area of the rights of federal enclave residents to state benefits, there has been a trend in state courts to hold that the exclusive jurisdiction of Congress does not deprive enclave residents of benefits which would otherwise be theirs. (See Note (1961) 49 Cal.L.Rev. 550.) These benefits include the right to vote (*Rothfels* v. *Southworth* (1960) 11 Utah 2d 169 [356 P.2d 612]), the right to relief benefits (*Board of County Com'rs of Co. of Arapahoe* v. *Donoho* (1960) 144 Colo. 321 [356 P.2d 267]), and the privilege of using public schools (*DuPont-Fort Lewis Sch. Dist.* v. *Clover Park Sch. Dist.* (1964) 65 Wn.2d 329 [396 P.2d 979]; *Harmony Grove School Dist.* v. *Camden School Dist.* (1957) 227 Ark. 902 [302 S.W.2d 281]; *Central Education Agency* v. *Independent Sch. Dist.* (1953) 152 Tex. 56 [254 S.W.2d 357]).

In holding that the State of Maryland could not deny citizens living on a federal enclave the right to vote, the Supreme Court in *Evans* v. *Cornman* (1970) 398 U.S. 419, 421 [26 L.Ed.2d 370, 373-374, 90 S.Ct. 1752], pointed out that the appellees clearly lived within the geographical boundaries of Maryland and noted the rejection in another context of the "fiction of a state within a state" in *Howard* v. *Commissioners* (1953) 344 U.S. 624, 627 [97 L.Ed. 617, 621, 73 S.Ct. 465]. In *Howard,* the court had stated: "The fiction of a state within a state can have no validity to prevent the state from exercising its power over the federal area within its boundaries, so long as there is no interference with the jurisdiction asserted by the Federal Government. The sovereign rights in this dual relationship are not antagonistic. Accommodation and cooperation are their aim." (344 U.S. at p. 627 [97 L.Ed. at p. 621].)

The precise issue raised here was decided in *Board of Chosen Freeholders of Burlington Co.* v. *McCorkle* (1968) 98 N.J. Super. 451 [237 A.2d 640]. There the New Jersey Superior Court in an action for declaratory judgment was asked whether a county court could commit inhabitants of federal enclaves to a state hospital for the mentally ill

and could apply child welfare laws to dependent and neglected children on federal enclaves. The court explained (at p. 645): "The modern view is that the term 'exclusive' as used in U.S. Const., Art. I, Sec. 8, cl. 17, relates to protection of the Federal Government against conflicting regulations [citations]," and quoted *Board of County Com'rs of Co. of Arapahoe v. Donoho, supra,* 356 P.2d at page 273, wherein the court stated, "in view of the fact that 'exclusive legislative' jurisdiction does not operate as an absolute prohibition against state laws but has for its purpose protection of federal sovereignty, we conclude that it does not operate to prohibit the payment of relief to a resident of [a military enclave]. The conferring of a benefit required by federal law cannot be construed as an act which undermines the federal sovereignty. Indeed by paying relief in these circumstances the federal policy to recognize citizens of the United States is fostered and promoted." The Supreme Court of New Jersey approved the view of the "exclusive legislation" clause expressed in *In re Petition of Salem Transportation Co. of New Jersey* (1970) 55 N.J. 559 [264 A.2d 47, 49], and in 1975 the New Jersey courts held that the juvenile delinquency laws of New Jersey could be applied to a juvenile living on a federal enclave (*State in Interest of D.B.S.* (1975) 137 N.J.Super. 371 [349 A.2d 105]).

Clearly, application of Welfare and Institutions Code section 300 is a benefit to the juvenile and one in accord with the policy of the United States. Not only do the personnel at Fort Ord not oppose the jurisdiction of the state courts in the area of child abuse, they actively seek it. Army regulation (AR) 608-1, chapter 7, issued by order of the Secretary of the Army on October 1, 1978, which describes the Army Child Advocacy Program (ACAP), announces that "[m]ost foster care placements will be done by direction of appropriate civilian authorities." (§ III, p. 7-7.) Pursuant to the federal policy expressed in AR 608-1, the Fort Ord command has invited the Monterey County child welfare authorities to exercise jurisdiction over abused children at Fort Ord and has placed Fort Ord dependents in Monterey County foster homes.

Unless Monterey County acts to protect the children at Fort Ord, these children may be left without governmental protection. The jurisdiction of military tribunals does not extend to persons, including military dependents who reside on federal enclaves, who are not members of the armed forces (*Reid v. Covert* (1957) 354 U.S. 1, 21 [1 L.Ed.2d 1148, 1165-1166, 77 S.Ct. 1222]), and without empowering legislation the federal district courts have no jurisdiction (*In re Burrus*

(1890) 136 U.S. 586, 593-594 [34 L.Ed. 500, 503, 10 S.Ct. 850]; see *Kline* v. *Burke Constr. Co.* (1922) 260 U.S. 226, 233-234 [67 L.Ed. 226, 231-232, 43 S.Ct. 79, 24 A.L.R. 1077]).

Furthermore, in title IV-B of the Social Security Act (42 U.S.C. §§ 620-626), Congress has authorized grants to the states for establishing, extending and strengthening "child welfare services" (§§ 620, 621). "Child welfare services" include, inter alia, public social services which supplement or substitute for parental care and supervision for the purpose of preventing or remedying the neglect or abuse of children and protecting and caring for dependent or neglected children (§ 625). In order to qualify for funds allotted under title IV-B, a state must make a satisfactory showing that it is making available its child welfare services "in all political subdivisions of the State, for all children in need thereof" (42 U.S.C. § 622(a)(2)). As federal enclaves such as Fort Ord remain geographically and legally a part of the state in which they are located (*Howard* v. *Commissioners, supra,* 344 U.S. 624), it follows that Congress contemplated that the state would make its services available to the children on federal enclaves.

The Monterey County Juvenile Court's exercise of its statutory jurisdiction to protect Terry promoted the federal policy toward abused children as reflected in the applicable army regulations and the Social Security Act. The court's exercise of its jurisdiction, invited by the federal authorities in command at Fort Ord, in no way conflicted with the federal sovereignty but was an integrated part of the army's efforts to alleviate the problems of child welfare on the base. Accordingly, there was no violation of article I, section 8, clause 17 of the Constitution.

Judgment is affirmed.

White, P. J., and Feinberg, J., concurred.