226 N.J. Super. 680 (1988)
545 A.2d 268
STATE OF NEW JERSEY, PLAINTIFF,
v.
ALBERT F. INGRAM, DEFENDANT.
Superior Court of New Jersey, Law Division Criminal Part, Gloucester County.
Decided March 23, 1988.
*682 Edward Neafsey, Deputy Attorney General, for Plaintiff (W. Cary Edwards, Attorney General of New Jersey)
Fred Last for Defendant (Office of the Public Defender of Gloucester County)
HOLSTON, J.S.C.
In Counts #4 and #8 of Indictment SGJ-113-83-3, the State alleges the unlawful abandonment and/or disposal of hazardous waste at the U.S. Army Corps of Engineers site in Oldmans Township, N.J. by the defendant, Albert Ingram, contrary to N.J.S.A. 2C:17-2 and N.J.S.A. 13:1E-9(g)(2) respectively.
Defendant moved to dismiss these counts at the end of the State's case on the basis of lack of jurisdiction in the Superior Court of New Jersey to hear and try these counts. It was the defendant's contention that abandonment of hazardous waste on property owned by the U.S. Army Corps of Engineers would have to be heard by the United States District Court for the District of New Jersey based on a federal indictment alleging a violation of federal law.[1]
*683 Defendant also moved for dismissal of these counts on the alternate ground that the State had failed to prove an essential element of the offense, namely, that the illegal abandonment or disposal of hazardous waste had occurred within the territorial jurisdiction of the State since the land in question is a Federal facility. The defendant contends that N.J.S.A. 2C:1-3 makes territorial jurisdiction an essential element of any crime alleged under 2C:1-1 et seq. of our statutes, citing State v. Schumann, 218 N.J. Super. 501 (App.Div. 1987). See also State in Interest of G.W., 206 N.J. Super. 50 (App.Div. 1985).
The motion alleging the lack of jurisdiction in the Court was denied. Since the motion was brought during the pendency of the trial, a ruling on the merits of the motion was precluded by R. 3:10-4. The philosophy of the Rule as expressed in Pressler, Current N.J. Court Rules, Comment R. 3:10-3, 4 (1988) is to preserve the State's right to appeal from a trial court's determination of lack of jurisdiction.
Generally, territorial jurisdiction is not specifically required to be proved as an element of an offense until it is placed in issue. State v. Schumann. Therefore, the Court at the conclusion of the State's case, since the defendant had not placed territorial jurisdiction in issue until the State had rested, permitted the State to reopen its case for the sole purpose of proving the territorial jurisdiction of the offenses in Counts #4 and #8.
*684 The Court gave the State a three day period in which to produce such facts as would establish territorial jurisdiction as a matter of law. In permitting the State to reopen after resting to supply a deficiency in the evidence the Court relied upon the authority contained in State v. Menke, 25 N.J. 66 (1957) and State in Interest of C.K., 198 N.J. Super. 290 (Law Div. 1984)
The State, after being given three days to produce evidence evidencing territorial jurisdiction, conceded that for purposes of the motion to dismiss Counts #4 and #8 that the land on which the hazardous waste was allegedly abandoned and/or disposed was federally owned land. The defendant did not dispute the State's contention.
The State cited 42 U.S.C.A. § 6961 (a section of the Federal Solid Waste Disposal Act) as establishing in clear and unambiguous language the waiver of sovereign immunity by the United States and thus, vesting in the State of New Jersey the authority to regulate the disposal of hazardous waste within the State. Absent such a waiver, the jurisdiction of the United States over lands purchased for forts, magazines, arsenals, dockyards and other needful buildings is exclusive. Surplus Trading Co. v. Cook, 281 U.S. 647, 50 S.Ct. 455, 74 L.Ed. 1091 (1930).
Section 6001 of the Solid Waste Disposal Act, in relevant part, reads:
Each department, agency and instrumentality of the executive, legislative and judicial branches of the Federal Government (1) having jurisdiction over any solid waste management facility or disposal site, or (2) engaged in any activity resulting, or which may result, in the disposal or management of solid waste or hazardous waste shall be subject to and comply with all Federal, State, interstate and local requirements, both substantive and procedural (including any requirement for permits or reporting or any provisions for injunctive relief and such sanctions as may be imposed by a court to enforce such relief), respecting control and abatement of solid waste or hazardous waste disposal in the same manner and, to the same extent, as any person is subject to such requirements, including the payment of reasonable service charges.

[emphasis added].
This Court concluded in an oral ruling, giving all inferences to the State from the evidence, that the State had put forward *685 sufficient evidence which, if believed, would establish territorial jurisdiction beyond a reasonable doubt and, therefore, denied defendant's motion to dismiss. State v. Reyes, 50 N.J. 454, 458-459 (1967).[2]
Counts #4 and #8 were, thus, submitted to the jury. The jury returned a verdict of guilty on all counts of the indictment, including Counts #4 and #8.
At the time the Court made its ruling on March 7, 1988, it reserved to itself the right to further research the issue and to more specifically outline its findings of fact and conclusions of law in a written opinion. Because of the belief that the analysis to follow will constitute a significant and non-duplicative contribution to an analysis of the territorial jurisdiction of State criminal laws on federally owned lands, this opinion is being written.
*686 For the reasons hereinafter expressed, the ruling of this Court heretofore made in its opinion from the bench is hereby reversed and indictment Counts #4 and #8 are dismissed with prejudice as a result of the failure of the State to prove beyond a reasonable doubt territorial jurisdiction as an essential element of each count. State v. Reyes.
The court's holding in State v. Schumann, 218 N.J. Super. 501 (App.Div. 1987) is instructive in framing the issue presented. As stated by Judge Landau:
... jurisdiction when placed in issue, is an element of an offense which must be proved beyond a reasonable doubt. Consistent with constitutional mandate, N.J.S.A. 2C:1-13(a) provides:
No person may be convicted of an offense unless each element of such offense is proved beyond a reasonable doubt. In the absence of such proof, the innocence of defendant is assumed. Under N.J.S.A. 2C:1-14(h), element of an offense means (1) such conduct or (2) such attendant circumstances or (3) such a result of conduct as ... (e) establishes jurisdiction or venue.... [at 506-507].
The jurisdiction referred to in the criminal code definition of the elements of an offense is territorial jurisdiction, defined in N.J.S.A. 2C:1-3. State in Interest of G.W., 206 N.J. Super. 50 (App.Div. 1985). This requirement or element of an offense is applicable to all offenses defined by other statutes enacted in New Jersey. N.J.S.A. 2C:1-5(b). It thus applies to offenses prescribed by both N.J.S.A. 2C:17-2 and N.J.S.A. 13:1E-9(g)(2).
Generally, evidence establishing territorial jurisdiction is supplied by showing the sites of the alleged offense. In this case, such evidence was offered through the testimony of Bruce Comfort, Supervisor, Bureau of Emergency Response, New Jersey Department of Environmental Protection. Comfort testified that drums allegedly owned by defendant were found abandoned 1/4 of a mile down a dirt road off of Route #130 in Oldsmans Township, N.J. This land is owned by the U.S. Army Corps of Engineers.
As previously mentioned, the State concedes the ownership by the Federal government but argues that 42 U.S.C.A. § 6961 acts as a waiver of sovereign immunity and vests the State of New Jersey with the authority to regulate the disposal *687 of hazardous waste within the State, including land owned by the United States. Initially, the Court was in agreement that this section provided New Jersey with jurisdiction and, therefore, ruled that sufficient evidence had been presented to establish territorial jurisdiction.
However, further research has proven to the contrary. The section cited by the State does provide in clear and unambiguous terms for a waiver of sovereign immunity for acts by the Federal government, its agencies and offices but in no way acts as a blanket relinquishment of jurisdiction by the Federal government over its own land. People of the State of California v. Walters, 751 F.2d 977 (9th Cir.1984) (waiver of sovereign immunity does not extend to criminal sanctions); Meyer v. U.S. Coast Guard, 644 F. Supp. 221 (E.D.N.C. 1986) (§ 6961 waiver does not allow for the imposition of civil penalties). Dicta in Walters suggests that the same result might not apply if a Federal agency or officer was the defendant as opposed to the United States itself.
The act does contemplate the cession of jurisdiction to the states after the State has had a Solid Waste Program approved by the Administrator of the Environmental Protection Agency. 42 U.S.C.A. § 6926. This section reads in pertinent part:
(b) Authorization of State program
Any State which seeks to administer and enforce a hazardous waste program pursuant to this subchapter may develop and, after notice and opportunity for public hearing, submit to the Administrator an application, in such form as he shall require, for authorization of such program. Within ninety days following submission of an application under this subsection, the Administrator shall issue a notice as to whether or not he expects such program to be authorized, and within ninety days following such notice (and after opportunity for public hearing) he shall publish his findings as to whether or not the conditions listed in items (1), (2), and (3) below have been met. Such State is authorized to carry out such program in lieu of the Federal program under this subchapter in such State and to issue and enforce permits for the storage, treatment, or disposal of hazardous waste (and to enforce permits deemed to have been issued under section 6935(d)(1) of this title) unless, within ninety days following submission of the application the Administrator notifies such State that such program may not be authorized and, within ninety days following such notice and after opportunity for public hearing, he *688 finds that (1) such State program is not equivalent to the Federal program under this subchapter, (2) such program is not consistent with the Federal or State programs applicable in other States, or (3) such program does not provide adequate enforcement of compliance with the requirements of this subchapter. In authorizing a State program, the Administrator may base his findings on the Federal program in effect one year prior to submission of a State's application or in effect on January 26, 1983, whichever is later.
(c) Interim authorization
(1) Any State which has in existence a hazardous waste program pursuant to State law before the date ninety days after the date of promulgation or regulations under sections 6922, 6923, 6924 and 6925 of this title, may submit to the Administrator evidence of such existing program and may request a temporary authorization to carry out such program under this subchapter. The Administrator shall, if the evidence submitted shows the existing State program to be substantially equivalent to the Federal program under this subchapter, grant an interim authorization to the State to carry out such program in lieu of the Federal program pursuant to this subchapter for a period ending no later than January 31, 1986 ...
The sole purpose of this section appears to be to shift the regulation and enforcement of solid waste to the states. Borough of Glassboro v. Gloucester County Board, 100 N.J. 134 (1985) (Although Congress has enacted legislation pertaining to solid waste, it has not pre-empted the field of solid waste management regulation.).
While the procedure set forth in section 6926 has been followed in New Jersey, the EPA only authorized New Jersey's program partially in 1983 and fully in February 1985. 48 Fed.Reg. 4661 (1983); 50 Fed.Reg. 5260 (1985). All of the acts alleged in the indictment occurred between March 25 and August 27, 1982, when the Federal government continued to exercise exclusive jurisdiction.
Coming full circle, the question returns to what is the impact of the land being owned by the Federal government.
Art. I, § 8, cl. 17 of the United States Constitution establishes exclusive jurisdiction in the Federal government over all places purchased by the consent of the legislature of the state in which the same shall be for the erection of forts, magazines, arsenals, dockyards and other needful buildings. "Other needful buildings" embraces whatever structures are necessary for *689 performance of the function of the Federal government. Silas Mason Co. v. Tax Commissioner of the State of Washington, 302 U.S. 186, 58 S.Ct. 233, 82 L.Ed.2d 187 (1937). Exclusive jurisdiction in the Federal government applies to the entire tract not simply to those portions actually used for the legally reserved purpose. Benson v. United States, 146 U.S. 325, 13 S.Ct. 60, 36 L.Ed. 991 (1982); Black Hills Power & Light Co. v. Weinberger, 808 F.2d 665 (8th Cir.1987).
While the language of clause 17 has been construed to allow for the acquisition of land by the United States through condemnation as well as purchase, Paul v. United States, 371 U.S. 245, 83 S.Ct. 426, 9 L.Ed.2d 292 (1963); Humble Pipe Line Co. v. Waggoner, 376 U.S. 369, 84 S.Ct. 857, 11 L.Ed.2d 782 (1964) the consent of the state legislature is still required. State v. Allard, 313 A.2d 439 (Me.Sup.Ct. 1973).
N.J.S.A. 52:30-1 states that:
The consent of this state is hereby given, pursuant to the provisions of article one, section eight, paragraph seventeen, of the Constitution of the United States, to the acquisition by the United States, by purchase, condemnation or otherwise, of any land within this state, for the erection of dockyards, custom houses, courthouses, post offices or other needful buildings.
Similarly, N.J.S.A. 52:30-2 provides that:
Exclusive jurisdiction in and over any land so acquired by the United States is hereby ceded to the United States for all purposes except the service of process issued out of any of the courts of this state in any civil or criminal proceeding. Such jurisdiction shall not vest until the United States shall have actually acquired ownership of said lands and shall continue only so long as the United States shall retain ownership of said lands.
Clearly, New Jersey has manifested its consent to the purchase of land by the Federal government and to the cession of all jurisdiction over such land. Notwithstanding the language of the statute, such is not the case. The cession of exclusive jurisdiction to the Federal government has been interpreted to apply only to those cases involving crimes committed within the Federal enclave, State v. Morris, 76 N.J.L. 222, 224 (Sup.Ct. 1908); State in Interest of D.B.S., 137 N.J. Super. 371, 374 (App.Div. 1975) and to foreclose state statutes which would *690 conflict with Federal laws. Freeholders of Burlington County v. McCorkle, 98 N.J. Super. 451 (Law Div. 1968); In re: Salem Transportation Co. of N.J., 55 N.J. 559 (1970) (citing Howard v. Commissioners of Louisville, 344 U.S. 624, 73 S.Ct. 465, 97 L.Ed. 617 (1953)).
In any case, the cession of exclusive jurisdiction to the Federal government by the State cannot take place unless and until the United States has accepted jurisdiction over lands acquired. 40 U.S.C.A. § 255. This section reads in pertinent part:
Notwithstanding any other provision of law, the obtaining of exclusive jurisdiction in the United States over lands or interest therein which have been or shall hereafter be acquired by it shall not be required; but the head or other authorized officer of any department or independent establishment or agency of the Government may, in such cases and at such times as he may deem desirable, accept or secure from the State in which any lands or interests therein under his immediate jurisdiction, custody, or control are situated, consent to or cession of such jurisdiction, exclusive or partial, not theretofore obtained, over any such lands or interest as he may deem desirable and indicate acceptance of such jurisdiction on behalf of the United States by filing a notice of such acceptance with the Governor of such State or in such other manner as may be prescribed by the laws of the State where such lands are situated. Unless and until the United States has accepted jurisdiction over lands hereafter to be acquired as aforesaid, it shall be conclusively presumed that no such jurisdiction has been accepted.
The perfection of acceptance of exclusive jurisdiction by the Federal government can only be accomplished by the "head or other authorized officer of any department or independent establishment or agency of the government" filing a notice of such acceptance with the Governor of the State. Absent such an acceptance, it shall be conclusively presumed that no Federal jurisdiction has been accepted.
The necessity of showing acceptance of exclusive jurisdiction is not required if the transfer took place prior to the enactment of 40 U.S.C.A. § 255 in 1940. United States v. Johnson, 426 F.2d 1112 (7th Cir.1970); Markham v. United States, 215 F.2d 56 (4th Cir.1954). Instead, a presumption exists that there has been acceptance of exclusive Federal jurisdiction if any benefit was conferred on the Federal government *691 by the transfer, i.e., that the Federal government has used the land for any Federal purpose. Fort Leavenworth R.R. v. Lowe, 114 U.S. 525, 5 S.Ct. 995, 29 L.Ed. 264 (1885).
Independent research, which is not meant to be exhaustive, reveals that the parcel in question was purchased from numerous land owners over a period of years. The earliest transfer occurred in 1911 while the last was in 1966. The total site encompasses well over 1200 acres. The Chief Operations Officer responsible for the site, Tom Schina, indicates that the site was originally used as a storage arsenal for materials which were brought up the Delaware River. Later, the site was converted to a prisoner of war camp during World War II. Finally, in 1959-60, the site was converted to a disposal site for the mud and silt dredged from the navigation channel of the Delaware River.
Based on the foregoing, to succeed on its case, the State would have had to proffer some evidence which would have established that the alleged abandonment or disposal took place on land acquired by the Federal government after 1940 and that the United States had not filed an acceptance of exclusive jurisdiction. The State has not proffered such evidence. The testimony, including all reasonable inferences, establishes the abandonment or disposal on the property but does not establish the location with any specificity. The unique character of land ownership requires that there be proof of when the specific section of land on which the abandoned barrels containing hazardous waste found on the federal lands owned by the U.S. Army Corps of Engineers was acquired by the United States and if acquired post 1940, that there had not been a federal acceptance of jurisdiction, pursuant to 40 U.S.C.A. § 255, thereby allowing enforcement of the State's criminal laws.
Therefore, based upon the findings of fact and conclusion of law set forth above, defendant's motion to dismiss Counts #4 *692 and #8 is granted. Defendant's motion challenging the Court's jurisdiction to entertain those Counts is moot.
NOTES
[1] Defendant, Albert Ingram, has, himself, filed a pro se motion similarly attacking the jurisdiction of the State. While not addressing the Federal/State dichotomy, he instead alleges that the United States Coast Guard has exclusive jurisdiction over the site, not the EPA. As authority, he cites 33 C.F.R § 126. For purposes of this opinion, it is irrelevant which of the multitude of Federal government agencies has jurisdiction over the disposal site since the result would remain the same. However, in the interest of covering all the bases, it is noted that the referenced section vests the Coast Guard with jurisdiction over "waterfront facilities." A designated "waterfront facility" means a waterfront facility designated for the handling and storage of and for vessel loading and discharging of various hazardous materials. 33 C.F.R. § 126.05. Such is not the case at bar and, hence, the regulation has no effect.
[2] The evidence presented which formed the basis of the above findings of fact included the testimony of Bruce Comfort, Supervisor for Bureau Emergency Response, N.J.D.E.P., that on August 15, 1982, he observed abandoned drums 1/4 mile down a dirt road off Route #130 on property owned by the U.S. Army Corps of Engineers in Oldmans Township, N.J., which were laying on their side with chemicals leaking from drum openings onto the ground noticeably staining the dirt. The testimony of N.J. Div. of Criminal Justice Investigator Thomas Flanagan also indicated that on the afternoon of August 14, 1982, he observed drums in the middle of the road at the site owned by the U.S. Army Corps of Engineers in Oldmans Township, N.J., with considerable chemicals spilled on the ground staining the ground soil. The drums were hissing and leaking and some were spray painted over with black paint. Frank Coolick, Asst. Director, Division Hazardous Waste Management, N.J.D.E.P., testified that U.S. Army Corps of Engineers' site in Oldmans Township was not licensed by the State of New Jersey as an authorized site for disposal or abandonment of hazardous waste during the three year period 1980-1983. He further testified that federally owned facilities were required to obtain licenses from N.J.D.E.P. for hazardous waste disposal or abandonment. There was also sufficient testimony from scientific experts produced by the State to establish that samples taken from this site constituted hazardous waste as defined in N.J.A.C. 7:26-1 et seq. Other evidence demonstrating the origin of the drums found at the site inferentially linked the defendant to the drums from which the samples of hazardous waste was obtained at the U.S. Army Corps of Engineers' site.