NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3565-19

INTERNATIONAL
BROTHERHOOD OF
ELECTRICAL WORKERS
LOCAL 400, JAMES BERRY,
and JOSEPH VOLPE,

     Plaintiffs-Appellants,

v.

BOROUGH OF TINTON FALLS,
NEW JERSEY DEPARTMENT OF
COMMUNITY AFFAIRS, CARY
COSTA, in his official capacity as
Construction Official and Building
Sub-Code Official of the Borough
of Tinton Falls, and SCOTT
BORSOS, in his official capacity
as Construction Official of the
Department of Community Affairs,

     Defendants-Respondents.

_____

CS ENERGY, LLC, and
CS ENERGY DEVCO, LLC,

     Intervenors-Respondents.

_____

APPROVED FOR PUBLICATION

June 15, 2021

APPELLATE DIVISION

Argued April 22, 2021 – Decided June 15, 2021

Before Judges Sabatino, Currier and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-3966-19.

Matthew B. Madsen argued the cause for appellants (O'Brien, Belland & Bushinsky, LLC, attorneys; Mark E. Belland and Matthew B. Madsen, on the briefs).

Scott W. Kenneally argued the cause for respondents Borough of Tinton Falls and Cary Costa (Starkey, Kelly, Kenneally, Cunningham & Turnbach, attorneys; Scott W. Kenneally, on the briefs).

Patrick D. Tobia argued the cause for respondents New Jersey Department of Community Affairs and Scott Borsos (Gordon Rees Scully Mansukhani, LLP, attorneys; Patrick D. Tobia, of counsel and on the briefs; Izik L. Gutkin, on the brief).

Laura M. Kessler argued the cause for intervenors-respondents (Sills Cummis & Gross, PC, attorneys; Joshua N. Howley and Laura M. Kessler, of counsel and on the briefs).

The opinion of the court was delivered by

CURRIER, J.A.D.

This case arises out of the development of a solar energy power plant on land leased by private parties from the United States Department of the Navy at Naval Weapons Station Earle (NWS Earle). Because plaintiffs[1] did not sue the Navy or the United States and the NWS Earle is located in a federal

---

[1] Joseph Volpe is an IBEW Local 400 member who worked on the solar power plant. James Berry is a resident and taxpayer of the Borough of Tinton Falls.

enclave, the trial court granted defendants' motions to dismiss under <u>Rule</u> 4:6-2(a) and (e) for lack of jurisdiction and for failure to state a claim and for failure to join an indispensable party, <u>Rule</u> 4:6-2(f). We affirm.

NWS Earle is comprised of over 10,000 acres of land in Monmouth County. It has been under exclusive federal jurisdiction since 1947.

Several years ago, the Navy issued a request for proposal for the lease of land on NWS Earle for the generation and distribution of renewable energy to enhance the federal government's energy security position. This portion of land is located in Tinton Falls.

Conti Enterprises submitted a bid and was awarded a thirty-seven-year lease by the Navy in 2017 to complete construction and manage the solar field. The lease was signed by Ben Moreell Solar Farm, LLC, (a subsidiary of Conti) and a representative of the United States government.

Moreell subsequently executed a contract with CS Energy, LLC, to develop, design, and build the solar energy project. According to the certification of Eric Millard, the Chief Commercial Officer of CS Energy, the Navy was "heavily involved" in the construction project and the "Navy's oversight and approval was required for each stage of the Project, . . . including . . . holding weekly meetings with CS Energy regarding the Project." Millard stated the Navy approved the project schedule, health and safety plans,

A-3565-19

site plans, and environmental protection plans.  In addition, the Navy received final site plan approvals from the Naval Ordnance Safety and Security Activity and Department of Defense Explosive Safety Board.

CS Energy contracted with Huen Electric New Jersey, Inc., (Huen Electric) to perform the electrical installation of the solar panels, which took place over several weeks and was completed on December 20, 2019.  The majority of the electricians working on the project were members of plaintiff International Brotherhood of Electrical Workers Local 400.  Millard stated the work entailed "connecting more than 70,000 solar panels to each other and to power lines leading to the electrical grid through several other pieces of standard electrical equipment, as well as commissioning the entire system to ensure the solar project functions properly and safely."

According to Millard, Huen Electric "performed daily safety checks to ensure the system was operating safely and correctly and to ensure that all electrical wiring, terminations, and connections were installed properly."  The project has been connected to the grid and fully operational since December 2019.

Steven Lawrence, Director of Engineering for CS Energy, supervised the engineering and commission of the solar project.  He advised that after Huen Electric completed its work and safety inspections, CS Energy hired several

4

independent companies to perform testing and commissioning on the various components of the electrical system.

One company, QE Solar, LLC, performed a "highly specialized test specific to the solar industry." The test did not detect any improper installation of the solar panel wiring.

Lastly, before the solar panel system could be connected to the power grid, it underwent extensive testing by Jersey Central Power & Light (JCP&L). The project passed all of the safety tests and JCP&L approved it for full operation in December 2019. Lawrence stated CS Energy did not receive any reports from plaintiff's workers regarding any safety issues with the electrical installation of the solar panels.

Of course, before the electrical work began on the solar panels, the panels had to be put together. The mechanical installation phase entailed inserting and bolting the panels onto metal frames. This work was performed by members of New Jersey Laborers Union, Local 472. In his certification, Millard advised that CS Energy did not hire Huen Electric or any other IBEW contractor to perform the mechanical installation "because their bids for [that phase] of the Project were non-competitive." IBEW was informed of this decision in early September 2019.

A-3565-19

On September 20, 2019, IBEW wrote a letter to Cary Costa, the Construction Official of the Borough of Tinton Falls. In that letter, IBEW advised Costa that CS Energy intended to perform work on the solar project without obtaining the required permits. The letter stated the failure to acquire a permit "raises serious concerns of safety regarding the project, its workers and the general public." IBEW contended the municipality was responsible for the issuance of permits and conducting inspections.

CS Energy responded to IBEW's letter, informing Costa that CS Energy was not required to obtain a permit for the project because it was located on NWS Earle. The letter advised that under the United States Constitution and the federal enclave doctrine, state laws did not apply to federal territory. The federal government had the exclusive right to regulate its properties.

CS Energy further advised that Huen Electric possessed a business permit and electrical license and was "performing the construction work in accordance with applicable codes and licensing requirements." Because the Navy was exercising supervisory authority over the electrical work, it was responsible for approving the installation of equipment and infrastructure.

IBEW continued to assert the municipality was responsible for permitting. In response, a representative of the Department of Community Affairs (DCA) wrote an email to both Costa and IBEW, informing them that

the solar panel project was subject to federal jurisdiction and not within the jurisdiction of the Borough of Tinton Falls or the municipality's Uniform Construction Code.

On November 8, 2019, IBEW filed a Verified Complaint in Lieu of Prerogative Writ and Order to Show Cause (OTSC) in the Law Division, naming the DCA, the Borough of Tinton Falls, as well as Cary Costa and Scott Borsos[2], both in their official capacities, as defendants. Plaintiff did not name the United States, Moreell, or CS Energy as defendants.

The complaint alleged that Tinton Falls had not exercised jurisdiction over the project and had "disavowed any responsibility for any work on the Project and/or concerning the Project's compliance with" relevant laws. The municipality's failure to enforce the requirement for "an electrical permit from the New Jersey Board of Electrical Contractors" allegedly "created a serious health and safety concern for [IBEW members] performing work on the Project, . . . as well as local residents and taxpayers." And, the complaint alleged that the "failure to issue a stop construction order until the

---

[2] Borsos was the Construction Official of the DCA.

A-3565-19

requirements of the New Jersey Electrical Contractors Licensing Act of 1962[3] are met will cause serious and irreparable harm to [IBEW members] . . . . "

Plaintiff sought a declaratory judgment that the specified work was being performed in violation of N.J.S.A. 45:5A-1, a preliminary injunction including a stop construction order, enforcement of all local building and permitting codes, and an award of attorney's fees plus costs and interest.

The DCA and Borough moved to dismiss the complaint. After learning of the lawsuit from a third party, CS Energy moved to intervene in the action. CS Energy also moved to dismiss the complaint and opposed the OTSC. At the time of oral argument on the motions and OTSC, the solar facility had been operational for more than a month. Plaintiffs' workers' last day on the site was January 3, 2020.

Defendants and CS Energy argued the court was required to dismiss the OTSC and verified complaint because plaintiff had not joined the federal government (or the Navy) as necessary parties, the trial court lacked jurisdiction over the matter because the work was performed in a federal enclave, and the matter was moot because the construction was complete, rendering the request for a stop work order meaningless.

_____

3 N.J.S.A. 45:5A-1 to -55.

A-3565-19

Following the arguments on January 24, 2020, Judge Joseph P. Quinn granted CS Energy's motion to intervene. In an oral decision, the judge denied the OTSC and granted defendants' motions to dismiss the complaint. Judge Quinn found the action against the DCA belonged before this court as it was an appeal from a final state agency decision. He also concluded that the federal enclave doctrine deprived the state court of jurisdiction over plaintiffs' causes of action.

In a comprehensive written decision and three orders issued the same day, Judge Quinn found the project was "taking place on a United States naval facility which is used to store munitions and weapons" and that "[a]llowing . . . the State to express local laws onto such an enclave would most certainly interfere with the jurisdiction asserted by the Federal Government." Without an affirmative authorization expressed by the federal government renouncing exclusive jurisdiction, Judge Quinn advised he would not "strip away" the federal government's jurisdiction.

Judge Quinn further reasoned that the federal government was a necessary party to the action because "a ruling here will clearly affect the jurisdiction of the Federal Government . . . ." He concluded "[t]his is reason enough to dismiss the [p]laintiffs' [c]omplaint" and grant defendants' cross-motions.

Relying on <u>Rule</u> 2:2-3(a)(2), Judge Quinn also determined that plaintiffs' claims regarding the DCA's "authority and responsibility to enforce permitting obligations and . . . applying the UCC" permit requirements were misplaced and should have been brought in an appeal before this court. He found that "transfer of this case [to federal court] would not be appropriate due to the Federal Government not being named [as] a party . . . ."

In considering plaintiffs' application for injunctive relief, the judge analyzed the claims under the <u>Crowe</u>[4] factors and found plaintiffs could not satisfy the required elements. Specifically, Judge Quinn noted that without the federal government as a party, there was scant likelihood of success on the merits and, since the project was completed and plaintiffs' workers were not scheduled to return to the site, there was no irreparable harm.

Plaintiffs moved for reconsideration and sought to have the matter reinstated and leave granted to amend the complaint to add the necessary parties. The applications were denied.

On appeal, plaintiffs contend the trial court erred in: (1) dismissing their complaint with prejudice; (2) failing to compel the DCA and/or the Borough to issue a stop work order until the permitting requirements were satisfied; (3) finding the federal enclave doctrine prohibited enforcement of state laws,

---

[4] <u>Crowe v. De Gioia</u>, 90 N.J. 126, 133 (1982).

regulations and ordinances; (4) finding Moreell and the federal government were indispensable parties to the action; (5) granting CS Energy's motion to intervene; (6) finding it had no jurisdiction to consider the allegations against the DCA; and (7) denying plaintiffs' motion for reconsideration and denying leave to amend the verified complaint.

We "'apply a plenary standard of review from a trial court's decision to grant a motion to dismiss.'" Gonzalez v. State Apportionment Comm'n, 428 N.J. Super. 333, 349 (App. Div. 2012) (quoting Rezem Family Assocs., LP v. Borough of Millstone, 423 N.J. Super. 103, 114 (App. Div. 2011)). We "owe[] no deference to the trial court's conclusions." Ibid.

On appeal, CS Energy argues that plaintiffs' claims are moot and "any remand would be futile because the construction of the project, including the [solar] panel installation was completed [in December 2019]", and any threat of injury to IBEW workers no longer exists because they have not been on-site [since that time]. Although this mootness argument was made to the trial court, Judge Quinn did not rule on this issue but instead considered the case on its merits. Because CS Energy did not file a cross-appeal, plaintiffs contend this court cannot now consider the issue of mootness.

As a general matter, "our courts normally will not entertain cases when a controversy no longer exists and the disputed issues have become moot." De

Vesa v. Dorsey, 134 N.J. 420, 428 (1993) (citing Oxfeld v. N.J. State Bd. of Educ., 68 N.J. 301, 303-04 (1975)). An issue is moot when the "decision sought in a matter, when rendered, can have no practical effect on the existing controversy." Redd v. Bowman, 223 N.J. 87, 104 (2015) (citations omitted).

In limited instances, a court will address the merits of appeals that have become moot, electing to do so "where the underlying issue is one of substantial importance, likely to reoccur but capable of evading review." Zirger v. Gen. Accident Ins. Co., 144 N.J. 327, 330 (1996) (citations omitted). We will typically do so when the matter evading review poses a significant public question or affects a significant public interest. See, e.g., Guttenberg Sav. & Loan Ass'n v. Rivera, 85 N.J. 617, 622-23 (1981).

Plaintiffs finished their work on the electrical installation before they presented their OTSC. They were not expected to and have not returned to the site for any further work on the solar energy project. As a result, we cannot altogether dismiss the contention that plaintiffs' claims are moot. However, like the trial court, we recognize the determinative issue here is whether the state court had jurisdiction over the causes of action raised in plaintiffs' verified complaint without the federal government being named as a party. Therefore, we will address plaintiffs' claims in turn.

Plaintiffs argue on appeal that the United States is not a necessary party because its interests will not be implicated until the DCA and Borough seek to enforce the relevant permitting statutes against it. They further assert that even if the federal government is deemed a necessary party, plaintiffs can amend their complaint to add the required parties and then seek to remove the state court action to the United States District Court. Or, plaintiffs contend for the first time in a supplemental brief, they can pursue concurrent separate actions in state and federal court. Therefore, plaintiffs seek a reversal of the dismissal order and leave to amend their complaint in the trial court to add the necessary parties.

As stated, Judge Quinn dismissed the complaint for plaintiffs' failure to join indispensable parties – the federal government and Ben Moreell. His determination was governed by Rule 4:6-2(f), which instructs a court analyzing the dismissal of a complaint to consider whether there was a "failure to join a party without whom the action cannot proceed, as provided by Rule 4:28-1."

Rule 4:28-1(a) provides:

> (a) Persons to be Joined if Feasible. A person who is subject to service of process shall be joined as a party to the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest in the subject of the action and is so situated that the disposition of the

action in the person's absence may either (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or other inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. . . .

[(Emphasis added).]

Whether a party is indispensable is fact sensitive. "As a general proposition, . . . a party is not truly indispensable unless he has an interest inevitably involved in the subject matter before the court and a judgment cannot justly be made between the litigants without either adjudging or necessarily affecting the absentee's interests." Toll Bros., Inc. v. Twp. of W. Windsor, 334 N.J. Super. 77, 90-91 (App. Div. 2000) (quoting Allen B. DuMont Labs., Inc. v. Marcalus Mfg. Co., 30 N.J. 290, 298 (1959)); see also Mack-Cali Realty Corp. v. State, 466 N.J. Super. 402, 447-48 (App. Div. 2021) (quoting Toll Bros.).

Plaintiffs' claims against the current defendants arise out of the terms of a contract between the Navy and Ben Moreell – two nonparties. Clearly, the Navy and Moreell have an interest "in the subject matter before the court." Furthermore, any interpretation by a court involving the contract will have implications for the Navy and Moreell. If the federal government and Moreell are not added as parties to this matter, they will be deprived of the opportunity

to assert their interpretation of the terms and conditions of their own contract. As Judge Quinn stated: "[n]either the Lessee nor the Federal Government are parties to this suit, and both have contractual rights which will be affected if this [c]ourt was to fashion a remedy . . . ."

Plaintiffs contend that if this court determines that the federal government and Moreell are necessary parties, as we have, then we should remand for the trial court to grant leave to amend the complaint and join those parties. We decline to do so because a remand and amendment would be fruitless.

NWS Earle is located in a federal enclave. As our Supreme Court has explained, a federal enclave is land that the "Constitution authorizes Congress to acquire . . . from States for needful purposes (Art. 1, Sec. 8, par. 17)[5] and our Legislature has explicitly ceded exclusive jurisdiction to the United States of all lands so acquired." Petition of Salem Transp. Co. of N.J., 55 N.J. 559, 562 (1970); see Paul v. United States, 371 U.S. 245, 267-69 (1963).

---

[5] The Congress shall have Power . . . To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings . . . .

A-3565-19

As stated earlier, NWS Earle was ceded in 1947 when the Secretary of the Navy informed the Governor of New Jersey of his acceptance of jurisdiction over the naval base. As a result, any activities on NWS Earle, located on federal land, are free from regulation by any state or locality. Hancock v. Train, 426 U.S. 167, 178 (1976). In essence, the federal enclave doctrine is a defense to certain state law claims.[6]

It is well established that the federal district courts have exclusive jurisdiction over the federal government and the Navy as a military branch. See Minnesota v. United States, 305 U.S. 382, 388 (1939) (stating that Congress has the exclusive authority to determine whether the United States can be sued and "in what courts the suit may be brought"). Without the express consent of the United States Congress, the federal government is immune from suit in a state court. Block v. North Dakota, 461 U.S. 273, 280 (1983). Plaintiffs do not assert they have such a waiver.

Therefore, the United States cannot be joined as a party in the state court suit. Because the trial court lacked jurisdiction over the federal government, Judge Quinn could not address or interpret the applicable contract. Plaintiffs

---

[6] Although there are several exceptions to the exclusivity of the federal enclave doctrine, plaintiffs do not contend the exceptions apply to these circumstances and therefore we need not address them.

16

also concede that any determination by the trial court would not be binding on the federal government or the Navy.

Because our state courts cannot exercise jurisdiction over the federal government, it follows that the United States cannot be added to the state court suit. Therefore, any amendment to the complaint to join the federal government would be futile. See Notte v. Merchs. Mut. Ins. Co., 185 N.J. 490, 501 (2006) (holding that motions for leave to amend should not be granted where the amended claim would nonetheless fail and therefore be a "useless endeavor"). Plaintiffs' recourse, should they choose to pursue their claims, is to file an action against the federal government in federal district court.

We briefly address and reject plaintiffs' contention that the trial court erred in granting leave to CS Energy to intervene in this action. Rule 4:33-1 provides for intervention as of right if the disposition of the action would impair or impede the intervenor's ability to protect its interest, and the intervenor's interest is not adequately represented by the already existing parties. Here, plaintiffs sought a stop work order that directly impacted the solar energy project and CS Energy's interest as the developer and construction manager of the project. Plaintiffs have demonstrated no abuse of discretion in the court's grant of leave to intervene.

17

In sum, we discern no reason to disturb Judge Quinn's decision to dismiss the complaint. The federal government and Moreell were necessary parties, without whom plaintiffs' claims could not be considered and adjudicated. However, even if the United States were added as a defendant, the federal enclave doctrine prevented the trial court from exercising jurisdiction over the federal government. Under federal enclave jurisdiction, any state law claims are barred. Unless a federal court determines otherwise, there are no state claims left to adjudicate in our trial courts. Therefore, the complaint was properly dismissed under Rule 4:6-2 (a), (e), and (f).

In light of our decision, we need not address the remainder of plaintiffs' arguments. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3565-19