[Civ. No. 29214.   Second Dist., Div. Four.   June 18, 1965.]

CITY OF PASADENA, Plaintiff and Respondent, v. COUNTY OF LOS ANGELES et al., Defendants and Appellants.

154

Harold W. Kennedy, County Counsel, George W. Wakefield, Chief Assistant County Counsel, and Edward H. Gaylord, Assistant County Counsel, for Defendants and Appellants.

Wendell R. Thompson, City Attorney, Fred R. Metheny, Assistant City Attorney, and Evelynn M. Finn and Robert A. Neher, Deputy City Attorneys, for Plaintiff and Respondent.

KINGSLEY, J.—This is an action for declaratory relief, seeking a decision sustaining the validity of a contract between plaintiff City of Pasadena and defendant County of Los Angeles, which contract relates to the enforcement of state health laws within plaintiff city and the cost of such enforcement. From a judgment in favor of the city, the county and the other defendants (members of the board of supervisors and interested county officers) have appealed.

## I

Under the provisions of the Health and Safety Code of this state, the state, the counties, and incorporated cities each play a part in the enactment and enforcement of rules and laws governing public health. The Legislature directly enacts laws of general statewide application; the State Board of Public Health may ''adopt . . . rules and regulations consistent with law for the protection of the public health.'' (Health & Saf. Code, § 102) ; the board of supervisors of each county ''shall take such measures as may be necessary to preserve and protect the public health in the unincorporated territory of the county, including, if indicated, the adoption of ordinances, regulations and orders not in conflict with general laws, . . .'' (Health & Saf. Code, § 450) ; and the governing body of a city ''shall take such measures as may be necessary to preserve and protect the public health, including the regulation of sanitary matters in the city, and including if indicated, the adoption of ordinances, regulations and orders not in conflict with general laws.'' (Health & Saf. Code, § 500.)

Enforcement of these sundry statutes, rules, regulations, orders and ordinances is similarly diverse. Enforcement of the state statutes and rules, and of county orders and ordinances, in unincorporated portions of a county, is vested in a county health officer (Health & Saf. Code, § 452). Within the boundaries of an incorporated city, the enforcement of all state statutes, rules and regulations, and of municipal ordinances, is vested in a city health officer. (Health & Saf. Code, § 504.) The salary and expenses of each local health officer— county, town or city—is paid by the local agency which appoints him. (Health & Saf. Code, §§ 450 and 504.)

Recognizing the desirability of combining at least some of these functions, the Legislature has enacted certain enabling provisions. An incorporated city may transfer to the county health officer the power and duty of enforcing, within the city, all of the state-created laws and rules (Health & Saf. Code, § 476), in which case the costs of local enforcement of these laws becomes a county expense. In addition, a board of supervisors and an incorporated city may contract for the enforcement within the city of the municipal ordinances by the county health officer (Health & Saf. Code, § 480), the expenses of the enforcement of these municipal ordinances remaining with the city (Health & Saf. Code, § 482). Thirdly, a county may contract with a city for the enforcement, by

the city's health officer, of state and county rules and laws in "any unincorporated territory adjacent to the city, . . ." (Health & Saf. Code, § 483), the expenses of such enforcement being still borne by the county (Health & Saf. Code, § 484).

In the instant case, the City af Pasadena, having duly cast upon the County of Los Angeles the obligation to enforce state laws in the city at the county's expense, pursuant to the power so to do conferred by section 476, then entered into a contract with the county under which the powers and duties previously transferred to the county health officer would again be performed by the health officer of the city, but now under the supervision and control of the county health officer and at the county's expense. The fiscal officer of the county having refused to pay the first installment of the moneys called for under this contract, the city instituted the present action to determine the validity of the contract.

## II

The parties have briefed the case with emphasis on the so-called "joint powers" act and with citations to cases standing for the general propositions: (a) that municipal corporations are bodies of limited powers; and (b) that such corporations do have implied powers to carry out their legitimate municipal functions. None of the cases cited are directly in point, and none are especially helpful.

In the light of *Avan* v. *Municipal Court* (1965) 62 Cal.2d 630 [43 Cal.Rptr. 835, 401 P.2d 227] we have no doubt of the basic power of the city and the county to enter into the contract in question. In *Avan,* the city public defender had been called on by the court to represent an indigent defendant in a misdemeanor prosecution pending in the municipal court —a duty which the law cast on the county, but which the county officer could not perform, since the law limited him to appearing in felony cases. The court held that payment to the city officer, by the county, under these circumstances was not only proper, but a duty compellable by mandate. We recognize that there are two differences between *Avan* and the case at bench. (1) In *Avan,* payment was made to the officer. However, the court points out that the officer was obligated by law to turn over these moneys to the city. We see no reason why the parties may not recognize the existence of this rule and agree that funds paid by the county as compensation for the time and effort of a municipal employee, for a service the county is obligated to perform, shall be paid

directly to the entity ultimately entitled thereto. At the time the contract before us was entered into, the city health officer could not devote time and effort to the enforcement of state law without the consent of his employer. (2) In *Avan,* the county officer involved was unable to perform the county's duty because a statute restricted him from acting. But an otherwise appropriate county officer may be unable to carry out a county's duty for other reasons, including the press of other duties of equal or superior importance. Since the county was obligated to see that the state health laws were enforced, it had the power to arrange for the necessary personnel. That the county board of supervisors elected to arrange for a health officer experienced in, and with a subordinate staff organized for, this function seems to us to have been a decision well within their discretionary powers, particularly since it accomplished a reuniting of duties in the general field of health which, except by such agreement with the city, had become divided between two agencies.

It is not contended that the contract increases the cost of enforcement of the state health laws within the boundaries of Pasadena over the cost of enforcement by the county health officer and his staff, nor that it enriches the City of Pasadena beyond the sum necessary to reimburse that city for the moneys it must pay to the city health officer and his staff for carrying out the county's obligations.

We can see no difference between the reimbursement by a county of a city for the services of a city public defender who performs a county duty, and the reimbursement by a county of a city for the services of a city health officer who performs a county duty.

### III

The county argues that, once the city had cast the duty of enforcing state health laws on the county, the subject of such enforcement became one of unconcern to the city and that the contract was, therefore, ultra vires. The outline of the statutes in this field, above set forth, shows the fallacy in this position. The city still retains its concern for the enforcement within its boundaries of all of the health laws, whosoever enacts them; the city may reinvest itself with the power and duty to enforce state law by a resolution terminating its action under section 476 (Health & Saf. Code, § 477). The city's municipal concern with the enforcement of health laws within its boundaries surely is as great as any

concern over their enforcement in adjacent unincorporated territory—an area of contract expressly authorized by section 483.

We hold that the contract before us was one within the legitimate contractual powers of the city and that, unless otherwise made unlawful, it was valid and binding on both parties.

## IV

It is argued, however, that the Legislature has indicated an intent that a contract such as the one herein involved should not be made. As we have pointed out above, express statutory authority is given for two kinds of city-county contracts in this field—a contract under section 480 for the enforcement of city ordinances by the county health officer, and a contract under section 483 for the enforcement of state laws by a city within adjacent unincorporated territory. Invoking the doctrine of *expressio unius est exclusio alterius,* the county here argues that the omission from the Health & Safety Code of express authority for this third type of contract is the equivalent of a statutory prohibition. We do not agree. The doctrine invoked is not one always to be applied. The Legislature has recognized the difficulties inherent in the enforcement of health laws by small geographical areas. As the county itself points out, disease and contamination do not start and stop at the boundaries of local governmental units. A solution appropriate for one city in one part of the state may not be appropriate for another city in another part of the state. We regard the legislative purpose as being to allow to the cities and counties concerned the broadest power to make such local arrangements for enforcement as the discretion of the several city and county governments might dictate. Here, the governing bodies of the City of Pasadena and the County of Los Angeles have agreed on a solution satisfactory to them; it is not for this court to interfere.

## V

In addition to holding in favor of the city on the issue of the validity of the contract, the trial court also allowed the city interest on the sums required to be paid thereunder from the dates when the several installments were payable under the terms of the contract.

The county claims error in this regard. In support of its position, it points to Paragraph 12 of the contract, which paragraph provides:

"12. This agreement is entered into with the understanding that counsel for the County questions the power of the County and the City to enter into this contract and that the County Auditor-Controller in recognition of his personal liability for illegal payments of County funds may accordingly refuse to make payments called for hereunder until such uncertainty is judicially clarified by final judgment of an appellate court of this State.

"In recognition of such eventuality, it is agreed that immediately on execution of this contract by both contracting parties, City will make appropriate demand for payment by the County Auditor of the initial payment provided for hereunder and if refused will immediately institute appropriate action to secure a judicial determination of the validity hereof. Counsel for County shall cooperate in efforts to secure an expeditious judicial determination of the issues.

"If by final judgment of a court of appellate jurisdiction it is determined that this contract is valid, all payments then due and payable by the County hereunder shall be immediately paid to City. If such appellate decision determines this contract not valid, then it is mutually recognized that no payments may legally be made hereunder for services rendered or provided to be rendered and City waives and foregoes any and all right to demand or pursue payment therefor under this contract, by *quantum meruit* or on any other theory of recoupment.

"Any deferment of payment by the County Auditor occasioned by the foregoing shall in no way effect City's obligation to institute and perform services hereunder on July 1, 1964, and to continue the same until judicial determination is obtained and becomes final."

As we understand the county's position, it is that the due date of the several payments were thus postponed until the final decision of the contemplated test suit. However, during the course of the proceedings herein, the parties stipulated, in writing, as follows: "For the purpose of this action it is hereby stipulated by and between the parties through their respective counsel that the contract herein (Exhibit 'B' of plaintiff's Complaint) at the time it was entered into and at all times subsequent thereto, was intended to be construed as stated herein.

"The last paragraph of Paragraph 11 reads: " 'Immediately upon execution hereof, County shall pay to City the

sum of $1,000.00. The remaining balance shall be paid in 12 monthly installments which shall be as nearly equal in amount as practical. The first such installment shall be due and payable on July 31, 1964, and the last such installment shall be due and payable on June 30, 1965. Each installment shall be paid upon the filing by the City of a claim for the amount due with the County Auditor-Controller.'

''By this statement, the parties intended that if the contract is valid the payments provided for therein are due and payable at the times stated in said contract whether there would be litigation or not.

''The parties hereto further intended, and so intended at the time the contract was entered into, that Paragraph 12 of said contract merely informs the City of Pasadena that the Auditor-Controller of the County will not pay until a court holds that the agreement is valid. Said Paragraph 12 is not an agreement by the City of Pasadena that no payment is due until the matter has been determined by a court.''

In the light of this stipulation, the county's argument is without validity. ██ By virtue of section 3287 of the Civil Code, a county is liable, as is any other debtor, for interest from the day an obligation becomes due and an error of law as to liability is no defense. (*Benson* v. *City of Los Angeles* (1963) 60 Cal.2d 355 [33 Cal.Rptr. 257, 384 P.2d 649].) ██ Since the parties have stipulated that Paragraph 12 above quoted did not affect the dates when payments fell due, but merely warned the city that the county intended to default in order that this suit might be instituted and decided, and made special provision for the practical problems which that default would create,[1] the usual law on interest applies and the judgment was proper.

The judgment is affirmed.

Files, P. J., and Jefferson, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied August 11, 1965.

---

[1]Since we hold the contract for the performance of the services at county expense to be valid, we express no opinion on the validity of the provision in Paragraph 12 whereby the city agreed to perform the services gratuitously in case the county could not be required to pay.