(848 P.2d 463)
No. 68,236

CLARK ORLOVETZ, *Appellant*, v. DAY & ZIMMERMAN, INC., A Foreign Corporation Doing Business in Kansas, *Appellee*.

Opinion filed March 12, 1993.

*Vernon D. Grassie*, of Girard, for appellant.

*Jeffry L. Jack*, of Dearth & Markham, Chartered, of Parsons, for appellee.

Before ELLIOTT, P.J., RULON, J., and TERRY L. BULLOCK, District Judge, assigned.

RULON, J.: The district court granted defendant's summary judgment motion in a wrongful termination action. Plaintiff appeals, claiming damages under breach of implied contract of employment and retaliatory discharge theories. We affirm.

Essentially we must determine if the district court erred in holding that plaintiff failed to state a cause of action against defendant under the law applicable to the federal enclave where plaintiff worked.

The material facts are as follows:

Defendant Day and Zimmerman, Inc., has been the contract operator of an explosives manufacturing facility since May 1, 1970. This facility is the Kansas Army Ammunition Plant (KAAP), owned by the United States and located in a federal enclave. The federal enclave was established on September 15, 1942.

Plaintiff worked for defendant in the testing area. On June 1, 1989, plaintiff was escorted to the personnel director, who informed him that his employment was terminated. Plaintiff contends his employment was terminated for reporting fraudulent

paperwork on a batch of grenades, specifically one grenade's failure to detonate. Defendant contends plaintiff was terminated for insubordination, making false statements, hindering operations within the plant, safe work practice violations, unsatisfactory work performance, creating discord among employees, failure to comply with company regulations, and failure to comply with sanitation regulations.

Plaintiff brought suit in district court, alleging breach of implied contract of employment and/or wrongful termination under a whistle-blower (tort) theory of damages. Defendant moved for summary judgment, asserting that only Kansas law existing as of September 15, 1942, is applicable because defendant's business operation is located on a federal enclave.

The hearing on defendant's motion for summary judgment was held September 19, 1991. Plaintiff failed to respond to defendant's memorandum of uncontroverted facts; therefore, plaintiff was deemed to have admitted those facts pursuant to Supreme Court Rule 141 (1992 Kan. Ct. R. Annot. 124). The district court adopted the defendant's uncontroverted facts as its own.

The district court found that law on a federal enclave is composed of federal statutes and decisions, and consistent state law in existence at the time the property is ceded to the federal government. The court concluded that the State of Kansas did not recognize either of plaintiff's causes of action in 1942; therefore, neither is available to plaintiff, and plaintiff had failed to state a cause of action cognizable under the applicable law. We agree.

## STANDARD OF REVIEW

"The rules to be applied by an appellate court in a case where summary judgment was granted by the trial court are well established. Summary judgment is proper only when the pleadings, affidavits, and the discovery record show there are no genuine issues of material fact, and that the moving party is entitled to judgment as a matter of law. [Citation omitted.] In reviewing a summary judgment, an appellate court must read the record in the light most favorable to the party who opposed the motion. [Citation omitted.] Thus, this court must give the plaintiffs the benefit of all favorable inferences arising from the record." *Morriss v. Coleman Co.,* 241 Kan. 501, 502, 738 P.2d 841 (1987).

## FEDERAL ENCLAVE

The land upon which the KAAP sits was acquired by the United

States on September 15, 1942. The transfer of jurisdiction was made pursuant to K.S.A. 27-101 *et seq.* and U.S. Const. art. I, § 8, cl. 17. The status of law applicable to federal enclaves has been clearly stated in *Stewart & Co. v. Sadrakula*, 309 U.S. 94, 84 L. Ed. 596, 60 S. Ct. 431 (1940). In that case a state labor law that was already in force when the property was ceded to the federal government was held to still be in effect as part of the exclusive federal jurisdiction.

The *Sadrakula* court said:

"It is now settled that the jurisdiction acquired from a state by the United States whether by consent to the purchase or by cession may be qualified in accordance with agreements reached by the respective governments. The Constitution does not command that every vestige of the laws of the former sovereignty must vanish. On the contrary its language has long been interpreted so as to permit the continuance until abrogated of those rules existing at the time of the surrender of sovereignty which govern the rights of the occupants of the territory transferred. This assures that no area however small will be left without a developed legal system for private rights. . . .

"The Congress has recognized in certain instances the desirability of such similarity between the municipal laws of the state and those of the federal parcel. Since only the law in effect at the time of the transfer of jurisdiction continues in force, future statutes of the state are not a part of the body of laws in the ceded area. Congressional action is necessary to keep it current. Consequently as defects become apparent legislation is enacted covering certain phases." 309 U.S. at 99-100.

In *Pacific Coast Dairy v. Dep't.*, 318 U.S. 285, 87 L. Ed. 761, 63 S. Ct. 628 (1943), the agricultural code of California provided a plan for stabilization and marketing of milk and cream. The state tried to revoke the license of a milk distributor who was selling milk at less than the minimum fixed price on Moffett Field, a federal enclave. Moffett Field was acquired by the federal government in 1931, and the relevant section of the state code was not enacted until 1941. The Court held that the state could not punish the distributor for doing in an exclusively federal jurisdiction what was lawful by the laws of the United States, under the superior authority of the supremacy clause. 318 U.S. at 291-95.

"When the federal government acquired the tract, local law not inconsistent with federal policy remained in force until altered by national legislation. The state statute involved was adopted long after the transfer of

sovereignty and was without force in the enclave. It follows that contracts to sell and sales consummated within the enclave cannot be regulated by the California law. To hold otherwise would be to affirm that California may ignore the Constitutional provision that 'This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; . . . shall be the supreme Law of the Land; . . .' It would be a denial of the federal power 'to exercise exclusive Legislation.' As respects such federal territory Congress has the combined powers of a general and a state government." 318 U.S. at 294.

Citing *Howard v. Commissioners of Louisville,* 344 U.S. 624, 97 L. Ed. 617, 73 S. Ct. 465 (1953), plaintiff argues that concurrent jurisdiction exists where state and federal exercise of authority is compatible. Plaintiff's reliance upon *Howard* is misplaced.

In *Howard,* the City of Louisville had annexed territory which included an ordinance plant in a federal enclave ceded to the United States years earlier by Kentucky. The City of Louisville then proceeded to collect income tax (there called a license tax) for the privilege of working within the city. The *Howard* Court clearly stated: "Kentucky's consent to this acquisition gave the United States power to exercise exclusive jurisdiction within the area. . . . [E]xclusive jurisdiction over the area still remains with the United States, except as modified by statute. U.S. Const., Art. I, § 8, cl. 17; *Surplus Trading Co. v. Cook,* 281 U.S. 647, 652, [74 L. Ed. 1091 50 S. Ct. 455]." *Howard v. Commissioners,* 344 U.S. at 627.

In *Howard,* the City of Louisville was permitted to tax the employees of the ordinance plant on the federal enclave because: "Within this jurisdiction, the right to tax income paid to employees of the Government who worked at the Ordinance Plant was granted by 4 U.S.C. §§ 105-110, known as the Buck Act." 344 U.S. at 627. Thus, the right was specifically granted to the City of Louisville by Congress through the Buck Act. Without the congressional action, the Louisville tax would not have been applicable on the federal enclave.

With respect to federal enclaves situated within the boundaries of the State of Kansas, only federal law and such Kansas law (not in conflict with federal law) in effect at the time of the establishment of the federal enclave are applicable to the activities and operation within such federal enclaves. An exception to the

above rule exists if subsequently enacted Kansas law is specifically adopted or made applicable by an act of Congress.

Turning to the case at hand, only federal law and that Kansas law in effect on September 15, 1942, (and not in conflict with federal law) are applicable to activities and operations at KAAP. In other words, Kansas law in force on September 15, 1942, became part of the applicable federal law at KAAP. Kansas law enacted in statutes or decisions after the federal acquisition is not part of the federal law at KAAP unless specifically adopted or made applicable by an act of Congress.

## IMPLIED CONTRACT

As we understand, plaintiff argues that his termination from employment by defendant was a breach of an implied contract of employment. If plaintiff has such a remedy, such remedy must have been available in Kansas at the time of the creation of the federal enclave where plaintiff worked.

We are satisfied that employment at will was the prevailing law in Kansas as late as 1976. *Brown v. United Methodist Homes for the Aged*, 249 Kan. 124, 132, 815 P.2d 72 (1991). See *Johnson v. National Beef Packing Co.*, 220 Kan. 52, 551 P.2d 779 (1976).

Furthermore, viewing the complete record in a light most favorable to the plaintiff, we are convinced that even if an implied contract theory is available, plaintiff did not have an implied contract of employment at the time of termination.

Stated briefly, an implied contract of employment theory is not available to plaintiff because no such cause of action was recognized on September 15, 1942, in Kansas.

## WHISTLE-BLOWER THEORY

Plaintiff's alternative theory of recovery was based upon the tort theory of retaliatory discharge for "whistle-blowing."

Defendant argues that such a cause of action was not recognized in Kansas until after 1942. Specifically, defendant relies upon two Kansas cases.

According to defendant, the first recognition of a cause of action for retaliatory discharge was stated in *Murphy v. City of Topeka*, 6 Kan. App. 2d 488, 630 P.2d 186 (1981). The *Murphy* court said, "[U]ntil the present pronouncement, it was not clearly known to defendants, or any other employer in this state, that

a retaliatory discharge would give rise to an action for damages."
6 Kan. App. 2d at 497.

Defendant further argues that our Supreme Court expanded
the reasoning in *Murphy* and judicially created "whistle-blowing"
as a retaliatory discharge exception to the employment-at-will
doctrine. *Palmer v. Brown*, 242 Kan. 893, 752 P.2d 685 (1988).

Plaintiff cites *United States v. Sharpnack*, 355 U.S. 286, 2 L.
Ed. 2d 282, 78 S. Ct. 291 (1958), for the proposition that all
state laws are in force in a federal enclave unless expressly re-
jected by Congress. We believe plaintiff misunderstands that case.
*Sharpnack* involved the Assimilative Crimes Act of 1948, in which
Congress effected a continuing adoption for federal enclaves of
such unpreempted criminal offenses and punishments that have
been put into effect by the respective states for their own gov-
ernments. 355 U.S. at 294.

Since 1825, Congress had continually enacted static assimilative
crime acts, which only adopted criminal laws in effect at that
time. This necessitated legislating the same act on a periodic
basis in order to maintain conformity with current law. *Sharp-
nack*, 355 U.S. at 291.

According to the *Sharpnack* Court:

"In 1948, coincidentally with its revision of the Criminal Code of the
United States, Congress finally adopted the present language. This expressly
limits the assimilation to acts or omissions committed within a federal enclave
and 'not made punishable by any enactment of Congress . . . .' It further
specifies that 'Whoever . . . is guilty of any act or omission
which . . . would be punishable if committed or omitted within the juris-
diction of the State . . . in which such place is situated, *by the laws thereof
in force at the time of such act or omission*, shall be guilty of a like [federal]
offense and subject to a like punishment.' (Emphasis supplied.) This assim-
ilation applies whether the state laws are enacted before or after the Federal
Assimilative Crimes Act and at once reflects every addition, repeal or amend-
ment of a state law. Recognizing its underlying policy of 123 years' standing,
Congress has thus at last provided that within each federal enclave, to the
extent that offenses are not pre-empted by congressional enactments, there
shall be complete current conformity with the criminal laws of the respective
States in which the enclaves are situated." 355 U.S. at 292-93.

We are convinced that only in the arena of criminal laws are
current state statutes assimilated into the federal jurisdiction as
they are enacted. Plaintiff's action is a civil case, not criminal.
Furthermore, even if the Assimilative Crimes Act of 1948 in-

cluded civil statutes and decisions, Kansas law would likely be preempted by the federal Whistle Blower Protection Act of 1989, 5 U.S.C. § 1201 *et seq.* (Supp. III 1991).

Plaintiff cites numerous cases to us to support his contention that states can enforce any law as long as there is no conflict with a federal law. We have reviewed such cases and conclude they are distinguishable because congressional legislation, or its equivalent, permitted state action. See, *e.g., In re Terry Y.,* 101 Cal. App. 3d 178, 161 Cal. Rptr. 452 (1980); *Board of Commissioners v. Donoho,* 144 Colo. 321, 356 P.2d 267 (1960); *Freeholders of Burlington Cty. v. McCorkle,* 98 N.J. Super. 451, 237 A.2d 640 (1968).

Finally, we have considered plaintiff's incidental argument that the judgment entered by the district court was void by reason of being granted prior to the submission of the journal entry of proceedings. Plaintiff provides no citation of law or explanation of this issue. The law is clear that when a party fails to brief an issue, that issue is waived or abandoned. *Feldt v. Union Ins. Co.,* 240 Kan. 108, 112, 726 P.2d 1341 (1986).

Affirmed.