TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

XAVIER BECERRA
Attorney General

_____

|  | : |  |
| --- | --- | --- |
| OPINION | : | No. 19-401 |
|  | : |  |
| of | : | January 15, 2021 |
|  | : |  |
| XAVIER BECERRA | : |  |
| Attorney General | : |  |
|  | : |  |
| CATHERINE BIDART | : |  |
| Deputy Attorney General | : |  |
|  | : |  |

_____

THE HONORABLE DAVID S. BALDWIN, THE ADJUTANT GENERAL, CALIFORNIA MILITARY DEPARTMENT, has requested an opinion on a question related to county authority to contract with the military.

## QUESTION PRESENTED AND CONCLUSION

Does California law authorize a county to contract with the military for the county to provide certain governmental services—such as water, waste removal, sewage, landscaping, street maintenance, and emergency vehicle repair—in support of a military installation within the county?

Yes. California law generally authorizes a county to contract with the military for the county to provide those kinds of services in support of a military installation within the county.

1

## ANALYSIS

We are asked broadly whether a county is empowered to contract with the military for the county to provide an array of governmental services—including water, waste removal, sewage, landscaping, street maintenance, and emergency vehicle repair—in support of a local military installation. As background, California is home to more than two dozen military installations, on which there are varying levels of federal jurisdiction.[1] We are presented with a general question, which would cover contracts with both federal and state military agencies.[2] In elaborating on the question, the requestor gives the example of a proposed contract for Ventura County to repair emergency vehicles at the United States Naval Base in Ventura. The requestor informs us that the then County Counsel advised that the County lacked authority to contract with the Navy to provide these services, but then negotiated a joint powers agreement for this purpose. The disagreement over the basis of the County's authority prompted the requestor to seek our opinion on a county's authority to contract to provide the asked-about services to military installations throughout the State. We conclude that a county has the general authority to enter into such a contract.[3]

---

[1] See Rep. of the Interdepartmental Committee for the Study of Jurisdiction over Federal Areas Within the States (1956) (hereafter "Rep. of Interdepartmental Study"), pp. 2 ("extent of jurisdictional control which the government may have over land can and does vary to an almost infinite number of degrees between exclusive legislative jurisdiction and a proprietorial interest only") & 86 (acres of California military installations are 23,244 exclusive federal jurisdiction, 18,548 partial jurisdiction, and 1,008,117 proprietorial jurisdiction), available at http://www.supremelaw.org/rsrc/fedjur/fedjur1.htm; Cal. State Lands Commission, Legislative Jurisdiction Database 1946-2018 (listing jurisdiction of various California military bases), available at https://www.slc.ca.gov/federal-legislative-jurisdiction/legislative-jurisdiction-database/; Office of Governor, Governor's Military Council, Cal. Bases (listing military bases in California), available at https://militarycouncil.ca.gov/s_californiamilitarybases/.

[2] See 5 U.S.C. § 102 (federal military departments are Army, Navy, and Air Force); Mil. & Vet. Code, §§ 50-51 (creating California's Military Department, which includes office of Adjutant General, California National Guard, State Guard, California Cadet Corps, and Naval Militia). The Adjutant General is the head of the Military Department and is responsible for its affairs, functions, duties, funds, and property. (Mil. & Vet. Code, § 52).

[3] We note that authority to contract is a distinct concept from whether a particular contract is valid. (*County of Ventura v. City of Moorpark* (2018) 24 Cal.App.5th 377, 392 [authority to execute agreement "does not render all of its terms valid"].) Our opinion does not reach any issues related to determining legal requirements for any contract, whether

This conclusion is based on our analysis of county powers deriving from the state Constitution and statutes.

A county is a legal and political subdivision of the State.[4]  It may exercise only those powers expressly granted to it by the state Constitution or a state statute, as well as powers that arise by necessary implication from those sources.[5]  The Constitution not only directs the Legislature to provide for county powers,[6] but also expressly empowers a county to "make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws."[7]  These powers are often referred to as "police powers," and a county may exercise them within the county unless the Legislature has provided otherwise.

A county's police powers are extensive.  They encompass the authority to provide for the general welfare and safety of the community.[8]  As the court of appeal has explained,

_____

they are general or specific to a particular subject matter.  (See, e.g., Gov. Code, § 25333 ["The board of supervisors may approve a contract . . . only after conducting a public hearing as a part of a regularly held meeting of the board"]; see also Gov. Code, § 23005 [county acts through its board of supervisors or authorized agents of the board].)

[4] Cal. Const., art. XI, § 1, subd. (a) (counties are legal subdivisions of state); Gov. Code, § 23000 (county is largest political division of state having corporate powers); *Los Angeles County v. City of Los Angeles* (1963) 212 Cal.App.2d 160, 164 ("With certain exceptions, the powers and functions of the counties have a direct and exclusive reference to the general policy of the state and are, in fact, but a branch of the general administration of that policy").

[5] 81 Ops.Cal.Atty.Gen. 393, 393-394 (1998) (citing Gov. Code, § 23003, *Byers v. Bd. of Supervisors* (1968) 262 Cal.App.2d 148, 157, and 78 Ops.Cal.Atty.Gen. 171, 180 (1995)); see Gov. Code, § 25207 (board of supervisors "may do and perform all other acts and things required by law not enumerated in this part, or which are necessary to the full discharge of the duties of the legislative authority of the county government"); see also 45 Cal.Jur.3d Municipalities §§ 130, 205-206 (2020) (discussing charter county and scope of home rule doctrine under which charter may trump conflicting statutes).

[6] Cal. Const., art. XI, § 1, subd. (b).

[7] Cal. Const., art. XI, § 7.

[8] *San Diego County Veterinary Medical Assn. v. County of San Diego* (2004) 116 Cal.App.4th 1129, 1135.

[u]nder this police power, counties have plenary authority to govern, subject only to the limitation that they exercise this power within their territorial limits and subordinate to state law. [Citations.] *A county may use its police powers to do whatever will promote the peace, comfort, convenience, and prosperity of its citizens* and these powers should not be lightly limited. [Citation.] Thus, a county's constitutional authority to engage in a challenged activity will generally be upheld if it is reasonably related to promoting the *public health, safety, comfort, and welfare*, and if the means adopted to accomplish that promotion are reasonably appropriate to the purpose.[9]

These broad powers generally authorize direct provision of the asked-about services, ranging from supplying water to repairing emergency vehicles that facilitate governmental and safety services within the county. Of course, there may be specific laws that govern how or to what extent, if at all, a particular service may be provided.[10] But generally speaking, a county's police powers authorize it to directly provide such services.[11]

As pertinent here, both constitutional and statutory law give counties authority to exercise their powers by contract. The constitutional police powers of a county, which empower it to provide the asked-about services within county territory, include the power to contract to provide those services.[12] And Government Code section 23004, subdivision

---

[9] *Id.* at pp. 1134-1135, italics added, and brackets, ellipsis, and internal quotation marks omitted.

[10] See *House v. Los Angeles County* (1894) 104 Cal. 73, 78 (where "a power is conferred by statute, and the mode of its exercise is also prescribed, the mode prescribed is usually held to be the measure of the power"); see, e.g., Pub. Res. Code, § 40057 et seq. (governing county's solid waste handling services).

[11] See *Waste Resource Technologies v. Dept. of Public Health* (1994) 23 Cal.App.4th 299, 310-311 (enforcement of waste collection ordinance is within city police power); *Thain v. City of Palo Alto* (1962) 207 Cal.App.2d 173, 187 (weed abatement is within city police power); *McBean v. City of Fresno* (1896) 112 Cal. 159, 163 (because proper sewers are so essential to municipality's hygiene and sanitation, court would not look to see whether power to construct and maintain them had been granted but to see if power was denied by charter); 8 Witkin, Summary 11th Const. Law § 1107 (2020) (overview of topics regulated by police power); see also Cal. Const., art. XI, § 7 (conferring same police power on city as county).

[12] See Cal. Const., art. XI, § 7 (conferring county police powers "within its limits"); *Cal. Reduction Co. v. Sanitary Reduction Works of San Francisco* (1905) 199 U.S. 306, 317 [26 S.Ct. 100, 50 L.Ed. 204] (board of supervisors "had power, under the Constitution

4

(c) specifically authorizes a county to make contracts "necessary to the exercise of its powers."[13]  This includes, for example, the power to enter into contracts with the federal government related to maintenance of public roads.[14]

A county's contractual power to provide certain governmental services exists even as to a military installation on a federal enclave.[15]  While this might appear to be barred by the territorial limitation on county powers, it is not.  Federal authority over federal enclaves does not necessarily preclude all county jurisdiction.[16]  Here, federal law permits counties

---

of the state, to make such sanitary regulations as were not inconsistent with the general laws, and that broad power carried with it the power, *by contract* and ordinance, to guard the public health in all reasonable ways," italics added); *Matula v. Superior Court* (1956) 146 Cal.App.2d 93, 98-99 (police power encompasses authority to regulate, conduct, and *contract* for garbage collection).

[13] See, e.g., 59 Ops.Cal.Atty.Gen. 666, 667 (1976) (because "county is authorized to enter into contracts (Gov. Code, §23004(c)) and to perform all acts necessary to the full discharge of the duties of the legislative authority of the county government," contract of indemnity is within county power).

[14] See, e.g., *U.S. v. San Diego County* (S.D. Cal. 1947) 75 F.Supp. 619, 619-620 (stating that county power to maintain public roads may be exercised by contract under Political Code section 4003, subdivision (3) [predecessor to Gov. Code, § 23004, subd. (c)], and upholding related contracts with federal agency).

[15] A federal enclave is land over which the federal government has jurisdiction.  (See generally *Taylor v. Lockheed Martin Corp.* (2000) 78 Cal.App.4th 472, 478 ["A federal enclave is land over which the federal government exercises legislative jurisdiction. [Citation.] The federal power over such enclaves emanates from [U.S. Const., art. I, § 8, cl. 17], which gives Congress the power '[t]o exercise exclusive Legislation in all Cases whatsoever' over the District of Columbia and 'to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings'"]).

[16] See *Orlovetz v. Day & Zimmerman, Inc.* (Kan.Ct.App. 1993) 18 Kan.App.2d 142, 148 [848 P.2d 463] (state could enforce its laws on federal enclave where "congressional legislation, or its equivalent, permitted state action"); *Bd. of Chosen Freeholders of Burlington County v. McCorkle* (1968) 98 N.J.Super. 451, 460 [237 A.2d 640] ("It appears to be settled law that the cession or purchase of territory does not create an absolute exclusive sovereignty within the federal enclave—as contradictory as the term may appear. [¶] The modern view is that the term 'exclusive' as used in U.S.Const., Art. I, Sec. 8, cl. 17, relates to protection of the Federal Government against conflicting regulations"); see

5

to provide support services to military installations.[17]  Indeed, there is a long history of local authorities contracting to supply services to military installations under exclusive federal jurisdiction.[18]

Turning back to state law, and as discussed above, counties have police powers to provide by contract the governmental services we are asked about here, unless the Legislature has provided otherwise.  We have found nothing that would operate as an absolute bar against a county exercising its police powers to provide these services to a military installation in the county.  To the contrary, state law explicitly recognizes the importance of military installations in California to national security and to the economy, and expresses a policy that seeks to preserve them for these reasons.[19]  As political

---

also *Johnson v. Morrill* (1942) 20 Cal.2d 446, 451, 454-455 (federal grants to county to enable it to exercise its jurisdiction in furnishing services to naval housing indicated lack of exclusive federal jurisdiction over that housing).

   [17] See, e.g., 10 U.S.C. § 2679(a)(1) (authorizing Secretary of military department to "enter into an intergovernmental support agreement, on a sole source basis, with a . . . local government to provide, receive, or share installation-support services if the Secretary determines that the agreement will serve the best interests of the department by enhancing mission effectiveness or creating efficiencies or economies of scale, including by reducing costs"); see Beth E. Lachman, et al., Rand Corporation, Military Installation Public-to-Public Partnerships (2016) pp. xiv-xv, 136 et seq. (discussing federal laws governing installation public-partnership agreements), available at https://www.rand.org/content/dam/rand/pubs/research_reports/RR1400/RR1419/RAND_RR1419.pdf.

   [18] See Rep. of Interdepartmental Study, *supra*, at p. 51 (for "refuse and garbage collection, snow removal, sewage, public road maintenance and the like" on installations under exclusive federal jurisdiction, where "the installation is not self-sustaining in these respects, it would appear from the information furnished by individual installations that in most cases these items are handled on a contractual basis with some local governmental agency").

   [19] See, e.g., Stats. 2002, ch. 971, § 1, subds. (a)(1) (reciting importance of state's military installations to national security), (a)(2)-(3) (reciting economic benefits of installations), (b) (finding their preservation in public interest), & 1.5 et seq. (amending and adding to Government Code and Public Utilities Code to provide for land-use planning compatible with installations); see also Health & Saf. Code, § 33492.40 (adopting measures "to avoid serious economic hardship and accompanying blight" by proposed military closures and "to assist communities within the County of San Bernardino in their attempt to preserve the military facilities and installations for their continued use as

19-401

subdivisions of state government, counties exercise the powers of the State for the purpose of advancing state policy, including such policy on "military organization."[20] And, broad police powers of a county extend to measures promoting economic prosperity.[21]

Further, for many decades, California has expressly provided far-reaching county powers relating to national defense.[22] Government Code section 53790 provides, for example, that "[n]otwithstanding budget limitations and restrictions imposed by law except limitations imposed by the Constitution," a county may expend public funds and use, or permit the use of, public property or personnel "to provide for adequate national or local defense."[23] These broad powers related to defense surely include the lesser power of contractually providing certain governmental services in support of a military installation.[24]

We have considered a view, expressed by the then-serving Ventura County Counsel, that specified statutory grants of county power to contract with other entities bar the asked-

---

airports" and related purposes).

[20] *Marin County v. Superior Court* (1960) 53 Cal.2d 633, 638-639.

[21] As the California Supreme Court explained:

> In its inception the police power was closely concerned with the preservation of the public peace, safety, morals, and health without specific regard for "the general welfare." The increasing complexity of our civilization and institutions later gave rise to cases wherein the promotion of the public welfare was held by the courts to be a legitimate object for the exercise of the police power. As our civic life has developed so has the definition of "public welfare" until it has been held to embrace regulations "to promote the *economic welfare, public convenience, and general prosperity of the community*."

(*Miller v. Bd. of Public Works of City of Los Angeles* (1925) 195 Cal. 477, 485, quoting *Chicago, B. & Q. Ry. Co. v. Illinois* (1906) 200 U.S. 561, 592 [26 S.Ct. 341, 50 L.Ed. 596], italics added.)

[22] See Stats. 1949, ch. 81, p. 296, § 1, adding Gov. Code, § 53790.

[23] Gov. Code, § 53790.

[24] Cf. *Williams v. Superior Court* (1993) 5 Cal.4th 337, 353, fn. 12 (greater power under California Public Records Act provision "necessarily includes the lesser"); 39 Ops.Cal.Atty.Gen. 39, 40-41 (1962) (statutes including Government Code section 53790 reinforce that counties have power to build and maintain community bomb shelters).

7

about power as to the military.[25] According to this view, for example, Government Code section 51301 restricts county power here, by authorizing a county and a city to contract with each other for city functions without mentioning the military.[26] The same view is expressed with regard to Government Code section 23008, which authorizes counties to provide work and goods to municipal corporations and districts in certain circumstances.[27] As shown above, however, there is ample authority provided elsewhere for a county to contractually provide the asked-about services. Like constitutional police powers, general law authorizes a county to provide the services. We are therefore unpersuaded that the cited statutes negate that authority and dictate the result here.[28]

There are also broad statutory schemes, such as the Joint Exercise of Powers Act, and the Revenue Bond Law of 1941, that provide relevant authority.[29] First, the Joint

---

[25] This argument seems to be based on the "*expressio unius est exclusio alterius*" canon: the expression of some things excludes those not expressed. But the then County Counsel framed the argument somewhat differently, invoking the principle that county "authority derived from a statute . . . must strictly follow [its] provisions; the mode of the power is also the measure of the power." (*Richter v. Bd. of Supervisors of Sacramento County* (1968) 259 Cal.App.2d 99, 105.)

[26] See Gov. Code, § 51301 ("A board of supervisors may contract with a city, governed under general laws or charter, within the county, and the city legislative body may contract with the county for the performance by its appropriate officers and employees, of city functions").

[27] See Gov. Code, § 23008 ("Whenever it is economical and satisfactory to do so, a county may lease equipment, perform work, or furnish goods for any district or municipal corporation within the county, if before the work is done or the goods are ordered or furnished by the county, an amount equal to the cost, or an amount 10 percent in excess of the estimated cost, is so reserved from the funds of the district or municipal corporation to be charged that it may be transferred to the county, when the work is completed or the goods are supplied"); see also 54 Ops.Cal.Atty.Gen. 139 (1971) (county may under that statute furnish computer services to irrigation district but not to private entities).

[28] Cf. *City of Pasadena v. Los Angeles County* (1965) 235 Cal.App.2d 153, 158 (express authorization for two types of county health-law enforcement contracts did not prohibit third type); 65 Ops.Cal.Atty.Gen 11, 13-14, 17-18 (1982) (statute governing county transfers of hospitals to enumerated entities did not restrict county authority under other statutes to transfer hospitals to other entity).

[29] See Gov. Code, §§ 6500.1 (Government Code sections 6500-6599.3 comprise "Joint Exercise of Powers Act") & 54300 (Government Code sections 54300-54700 comprise

8

Exercise of Powers Act authorizes county and state agencies to enter into agreements with each other, and with federal agencies, for one of them to exercise a power held by each party, on behalf of and in the territory of the other one.[30]  Thus, a county may enter into a joint powers agreement under the Act to provide the asked-about services on behalf of a military agency to an installation.  Specifically, the Act authorizes a county to exercise a power—such as supplying water, maintaining roads, etc.—for a military agency that also has that power, if the agreement specifies either its purpose and how it will be accomplished or the power to be exercised and manner of doing so.[31]  Second, the Revenue Bond Law of 1941 authorizes counties to operate an enterprise for certain governmental services, such as the collection, treatment, or disposal of garbage or sewage.[32]  And we see nothing in this law intended to preclude the county from contracting to provide a military installation with services from such enterprise.[33]

---

"Revenue Bond Law of 1941").  In addition to these broad statutory schemes, Government Code section 53703 authorizes a county to do all acts necessary, including contracting with federal and state governments, to participate in federal grants for enumerated purposes such as health, safety, welfare, public safety, and public works.  (Gov. Code, § 53703.)

[30] Gov. Code, §§ 6500 et seq. & 6506 ("One or more of the parties may agree to provide all or a portion of the services to the other parties"); see 2 Cal.Jur.3d Admin. Law § 21, fn. 1 (2020) ("The Joint Exercise of Powers Act . . . basically provides a procedure or manner by which existing powers may be exercised by cooperative action rather than granting new powers"); 66 Ops.Cal.Atty.Gen. 183, 185 (1983) ("The statute means nothing if it does not mean that cities may contract in effect to delegate to one of their number the exercise of a power or the performance of an act in behalf of all of them, and which each independently could have exercised or performed," quoting *City of Oakland v. Williams* (1940) 15 Cal.2d. 542, 549).

[31] See Gov. Code, § 6503.

[32] See, e.g., Gov. Code, §§ 54307 ("Local agency" includes county authorized to acquire, build, own, or operate "enterprise"), 54309 ("Enterprise" is "revenue-producing improvement, building, system, plant, works, facilities, or undertaking used for or useful" for purposes including supplying water and "collection, treatment or disposal of" garbage or sewage), 54344 (authorizing local agency to "prescribe, revise, and collect charges for the services, facilities, or water furnished by the enterprise").

[33] See Gov. Code, §§ 54358 (authorizing local agency to "execute all instruments, perform all acts, and do all things necessary or convenient in the exercise of the powers granted by this chapter or in the performance of its covenants or duties") & 54611 (authorizing local agency to contract with federal agency in constructing, maintaining, and operating enterprise "pursuant to federal legislation under which [federal] aid, assistance, and cooperation may be furnished" for such purposes).

9

For all of the above reasons, we conclude that a county is generally authorized to contract with the military to provide certain governmental services in support of a military installation within the county.

*****